Beverly LUCAS, Appellant,

v.

**BROWN & ROOT, INC., Appellee.**

**No. 83–1923.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1984.

Decided June 6, 1984.

Rehearing and Rehearing En Banc Denied July 17, 1984.

William L. Bedman, Powell, Wilson, Brown & Maverick, Houston, Tex., J. Bruce Cross, Donna Smith Galchus, House, Jewell, Dillon, Dover & Dixon, P.A., Little Rock, Ark., for appellee.

Before ARNOLD, JOHN R. GIBSON and BOWMAN, Circuit Judges.

ARNOLD, Circuit Judge.

Plaintiff Beverly Lucas attacks her discharge by defendant Brown & Root, Inc., on three theories: sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; violation of an implied covenant of good faith and fair dealing; and the existence of such outrageous and extreme circumstances as to render the discharge tortious. Jurisdiction of the latter two causes of action, both of which arise under the law of Arkansas, is based on diversity of citizenship.

■ The Title VII claim was dismissed by the District Court as untimely, having been filed on the 91st day after plaintiff received her right-to-sue letter. We agree with this holding and affirm it without further discussion. The state-law claims were also dismissed for failure to state a cause of action, and as to them we disagree. The complaint, which must be taken as true and read generously for present purposes, alleges that plaintiff was fired because she would not sleep with her foreman. We hold that this allegation states both a contract and a tort claim under the law of Arkansas, and we therefore reverse in part.

I.

We address first the assertion that Lucas's termination for the reason alleged was a breach of contract. The theory is that every contract of employment, even one ordinarily terminable at will, contains an implied covenant of good faith and fair dealing, which under limited circumstances may make discharge actionable. Defend-

ant counters that Arkansas does not recognize a cause of action for wrongful discharge, and that plaintiff should not be allowed to circumvent Title VII by being permitted to pursue a state-law claim when she has failed to comply with Title VII's time limits.

Under the original common-law rule, employment was terminable at the will of either party. An employer could fire an employee at any time and for any reason or no reason. There has been a steady trend, however, towards recognizing a public-policy exception to the "at-will" rule. See generally, *e.g.,* Blades, *Employment At Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power,* 67 Colum.L.Rev. 1404 (1967); Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith,* 93 Harv.L.Rev. 1816 (1980).

For example, in *Petermann v. International Brotherhood of Teamsters, Local 396,* 174 Cal.App.2d 184, 344 P.2d 25 (1959), the leading case in this area, the court held that it was against public policy to allow the employer to fire an employee because the employee would not commit perjury, despite the at-will relationship. Other cases recognizing this or a similar exemption include, for example: *Fortune v. National Cash Register Co.,* 373 Mass. 96, 101, 364 N.E.2d 1251, 1255–56 (1977) (employer fired employee to avoid paying bonuses; held, bad-faith termination—employment contract contains implied covenant of good faith and fair dealing, so a termination in bad faith is a breach of the contract); *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 133, 316 A.2d 549, 551 (1974) (a bad-faith, malicious, or retaliatory termination "is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract"); *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 72, 417 A.2d 505, 512

(1980) (an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy found in legislation; administrative rules, regulations, or decisions; judicial decisions; or a professional code of ethics).[1]

No Arkansas case has held that a particular discharge was against public policy, but the Arkansas Supreme Court has indicated a willingness to recognize a public policy exception to the employment-at-will doctrine. In *M.B.M. Co. v. Counce,* 268 Ark. 269, 596 S.W.2d 681 (1980), the plaintiff was discharged, according to defendant, because of customer complaints. Counce contended that her firing was wrongful because it was based on a false accusation that she had stolen some money. She argued that her termination was a breach of the employment relationship in violation of public policy. The Court rejected this claim but stated:

> We might well agree with Ms. Counce if there was any indication that she was discharged for exercising a statutory right, or for performing a duty required of her by law, or that the reason for the discharge was in violation of some other well established public policy.

268 Ark. at 273, 596 S.W.2d at 683. See also *Scholtes v. Signal Delivery Service, Inc.,* 548 F.Supp. 487, 493–94 (W.D.Ark. 1982); Comment, *Wrongful Discharge of Employees Terminable at Will—A New Theory of Liability in Arkansas,* 34 Ark. L.Rev. 729, 730 (1981).

The decisions of the Supreme Court of Arkansas establish two propositions: (1) that employees whose contracts are for no fixed term may ordinarily be discharged, just as they may ordinarily quit, for any reason or for no reason; and (2) that there are exceptions to this rule, coming into play when the reason alleged to be the basis for a discharge is so repugnant to the general

---

**1.** *Contra, Phillips v. Goodyear Tire & Rubber Co.,* 651 F.2d 1051, 1055–56 (5th Cir. Unit A 1981) (Phillips fired for testifying truthfully in a deposition in a federal suit; held, neither Georgia nor Texas recognizes a cause of action for retaliatory discharge in favor of an employee hired

for an indefinite period); *Meredith v. C.E. Walther, Inc.,* 422 So.2d 761 (Ala.1982) (Alabama Supreme Court declined to recognize a cause of action for wrongful discharge on the facts of that case).

good as to deserve the label "against public policy." Public policy is usually defined by the political branches of government. Something "against public policy" is something that the Legislature has forbidden. But the Legislature is not the only source of such policy. In common-law jurisdictions the courts too have been sources of law, always subject to legislative correction, and with progressively less freedom as legislation occupies a given field. It is the courts, to give one example, that originated the whole doctrine that certain kinds of businesses—common carriers and innkeepers—must serve the public without discrimination or preference. In this sense, then, courts make law, and they have done so for centuries. It is in just this sense, we think, that the Supreme Court of Arkansas uses the phrase "public policy" in its opinions dealing with employment at will.

■ On this appeal we sit as just another court of the State of Arkansas, applying not our own private views of public policy (though no judge ever completely leaves them behind, because no person can), but the public policy of Arkansas as it has in the past been declared by the Supreme Court of the State and as we think it will be declared by that Court in the future. What we know of the shared moral values of the people of Arkansas and the considerable clues to be found in positive law point alike to the conclusion that this complaint does state a claim. Prostitution is a crime denounced by statute. It is defined as follows:

A person commits prostitution if in return for, or in expectation of a fee, he engages in or agrees or offers to engage in sexual activity with any other person. Ark.Stat.Ann. § 41–3002(1) (Supp.1983). It is at once apparent that the shoe fits. A woman invited to trade herself for a job is in effect being asked to become a prostitute. If this were a criminal prosecution, it might be argued that a job is not a "fee" within the meaning of this statute, and a court, applying the maxim that criminal statutes are to be strictly construed, might agree, holding that "fee" means only money, and not other things of value. But in this civil action no such narrow interpretation is required or appropriate. A wage-paying job is logically and morally indistinguishable from the payment of cash. Indeed, it necessarily involves the payment of cash.[2]

■ Plaintiff should not be penalized for refusing to do what the law forbids. And if she can prove that this is in fact what happened, and that her employer is responsible for it,[3] she can recover damages for breach of contract. For it is an implied term of every contract of employment that neither party be required to do what the law forbids. "[A]n employer's obligation to refrain from discharging an employee who refuses to commit a criminal act ... reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes." *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 176, 610 P.2d 1330, 1335, 164 Cal.Rptr. 839, 844 (1980).

■ Defendant argues that recognizing this wrongful-discharge claim would allow

---

**2.** In reaching this conclusion we follow the lead of Mr. Chief Justice Fogleman in *Counce*. His opinion for a unanimous Court implies that a complaint alleging that an employee was discharged "for refusing to 'go out' with her foreman" would state a claim. 268 Ark. at 273, 596 S.W.2d at 683. Defendant argues that the later case of *Griffin v. Erickson*, 277 Ark. 433, 642 S.W.2d 308 (1982), removes any implication that Arkansas law would recognize a public-policy exception. We disagree. The complaint in *Griffin* did not allege that the plaintiff's discharge violated any sharply defined public policy of the State of Arkansas. The Court's opinion does not discuss the public-policy exception, nor does it cite *Counce*.

**3.** If, for example, Brown & Root took steps to correct the allegedly offending foreman within a reasonable time, it would not be responsible for his conduct. *Cf. Barrett v. Omaha Nat'l Bank*, 726 F.2d 424, 427 (8th Cir.1984) ("Sexual harassment by a co-employee is not a violation of Title VII unless the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action.").

plaintiff to circumvent Title VII's limitations provisions. Title VII does not, however, "exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this title." 42 U.S.C. § 2000e–7. Therefore, Title VII does not preempt this state-law contract claim.

## II.

Plaintiff also argues that her complaint states a cause of action for intentional infliction of emotional distress.

> To avoid summary dismissal, facts must be pleaded which support the prima facie elements.... Appellants' allegations, accepted as true, must show (1) extreme and outrageous conduct, (2) willfully or wantonly performed, (3) which caused severe emotional distress.

*Orlando v. Alamo*, 646 F.2d 1288, 1290 (8th Cir.1981) (citations omitted).

> By extreme and outrageous conduct, we mean conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

*Counce, supra*, 268 Ark. at 280, 596 S.W.2d at 687 (citation omitted).

The acts which Lucas claims to be "extreme and outrageous" include, in addition to her supervisor's act of propositioning her, Brown & Root's contesting her unemployment compensation on the ground that she was discharged for misconduct, for failing to return to work or call in. Lucas contends that defendant's actions were extreme, were intentional, and caused severe emotional distress.

The acts in *Counce* which were alleged to be "extreme and outrageous conduct" and withstood summary dismissal are as follows: after Ms. Counce was laid off she had to submit to a polygraph test to collect the bulk of her final check, the amount her employer withheld after concluding that some money of his had been stolen. She then had to cause a labor department investigation to collect her money. Also, she was "laid off" at a time when her employer, Coleman Bar-B-Q, was advertising for counter help. The Court found "that there was a material issue of fact as to whether M.B.M.'s conduct was extreme and outrageous." *Id.* at 281, 596 S.W.2d at 688.[4]

In finding Coleman Bar-B-Q's conduct actionable, the Arkansas Supreme Court noted that "there are cases in which the extreme and outrageous nature of the conduct arises not so much from what is done as from the abuse by the defendant of a relationship with the plaintiff which gives him power to damage the plaintiff's interests." *Id.* (citation omitted). The conduct Lucas alleges—the sexual advances placing her job on the line, and the misrepresentations with respect to her unemployment compensation—in light of the nature of the employment relationship and the power of the employer, state a cause of action for intentional infliction of emotional distress.[5] Of course we express no opinion on her chances of success on the merits. That will depend on her ability to prove that a foreman conditioned her continued employment on sexual relations, that defendant is re-

---

**4.** Another state has recognized a cause of action for intentional infliction of emotional distress in a similar situation. In *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315 (1976), the employer suspected some of the waitresses were stealing money. When no one confessed to stealing, the employer simply started firing waitresses alphabetically, starting with plaintiff. The court held that plaintiff stated a cause of action for intentional infliction of emotional distress.

**5.** *Givens v. Hixson*, 275 Ark. 370, 631 S.W.2d 263 (1982), cited by defendant, is distinguishable. Givens was fired allegedly because he was lazy. Givens argued that at the time he was fired, his employer screamed, stomped his foot, and was very angry. There were no allegations that he interfered with Givens's receiving his money, as in this case and in *Counce*, or of continued employment's being conditioned on having sexual relations with a supervisor.

sponsible for this conduct, and that defendant's representations in the course of contesting her application for unemployment compensation were false and known by defendant to be false.

### III.

The dismissal of the Title VII claim is affirmed. As to the contract and tort claims arising under state law, we hold that the complaint stated a claim. The judgment dismissing those claims is reversed, and the cause remanded for further proceedings consistent with this opinion.