**Pamela K. MUMPHREY, Plaintiff,**

**v.**

**JAMES RIVER PAPER COMPANY, INC., Defendant.**

Civ. No. 91–2078.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Nov. 15, 1991.

Pamela K. Mumphrey, pro se.

James A. Arnold, II, Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD, District Judge.

In July, 1989, the James River Paper Company placed one of its black women employees, Pamela Mumphrey, on a year's probation. During that year, Ms. Mumphrey alleges, her supervisor continually harassed her, sexually and otherwise, and treated her differently from whites and men. In July, 1990, just before the year expired, the company fired her, citing as its reason her alleged repeated violations of work rules.

Ms. Mumphrey filed a charge of race discrimination under Title VII with the EEOC in September, 1990. In December, 1990, the EEOC advised her that it had determined that no violation of the statute had occurred and that her charge would be dismissed. The EEOC also advised her that unless she asked for an administrative review of that determination,[1] the dismissal would become final on January 15, 1991. Finally, the EEOC advised her that if she wanted to sue, she would have to file her complaint by April 15, 1991. An attachment defined "complaint" as "a short statement of the facts of your case which shows that you are entitled to relief."

On April 15, 1991, Ms. Mumphrey filed an application to proceed *in forma pauperis* with this court. That application was granted on April 16, 1991, and the clerk's office filed Ms. Mumphrey's complaint on that day. The pleading names the James River Paper Company as defendant and asserts federal claims of race and sex discrimination under Title VII and state law claims of breach of implied covenant of fair dealing, wrongful discharge, and outrage.

Defendant James River Paper now moves for summary judgment on several grounds. The motion will be granted in part and denied in part.

## I.

■ Defendant James River Paper first contends that Ms. Mumphrey's complaints of race and sex discrimination under Title VII, *see* 42 U.S.C. § 2000e–2(a)(1), are barred because her "civil action" was not "brought" within 90 days of the EEOC's dismissal of her charge. *See* 42 U.S.C. § 2000e–5(f)(1). Under controlling precedent, the court has no choice except to agree.

In *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 150 n. 4, 104 S.Ct. 1723, 1725 n. 4, 80 L.Ed.2d 196 (1984) (*per curiam*), the Supreme Court considered whether a plaintiff's filing of a right-to-sue notice from the EEOC could satisfy the 90–day requirement. The Court first commented that because the right-to-sue notice contained "no statement ... of the factual basis for the claim of discrimination," it could not "qualify as a complaint," *see* Fed. R.Civ.P. 8(a)(2). *Baldwin County Welcome Center*, 466 U.S. at 149, 104 S.Ct. at 1724. The Court then held that nothing in the record would support the equitable tolling of the 90–day limit. *Id.* at 151, 104 S.Ct. at 1725. This court, then, turns first to the question of whether Ms. Mumphrey's *in forma pauperis* application, which was timely filed, could be construed as a "complaint." *See id.* at 149, 104 S.Ct. at 1724.

Fed.R.Civ.P. 8(a) requires that a complaint contain "a short and plain state-

---

1. Ms. Mumphrey did not ask for an administrative review.

ment" of the grounds for jurisdiction, "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for judgment for the relief the pleader seeks." Each "averment of a pleading" is to be "simple, concise, and direct. No technical forms of pleading ... are required." Fed.R.Civ.P. 8(e)(1). "All pleadings" are to be construed so as "to do substantial justice." Fed.R.Civ.P. 8(f).

The *in forma pauperis* application in this case states that the "nature of [the] action" is "a suit for race and sex discrimination in employment." It has no explicit reference to grounds for jurisdiction or a demand for judgment. The court, however, finds that the reference to "race and sex discrimination" is sufficient to support jurisdiction, since both race and sex discrimination are prohibited by federal statute. *See* 5 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* 2d § 1206 at 90–93, 95, § 1214 at 133–34 (1990). The court also finds that since the statute prohibiting race and sex discrimination specifies the relief available, *see* 42 U.S.C. § 2000e–5(g), the *in forma pauperis* application can reasonably be construed as including a sufficient demand for judgment. *See* 5 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* 2d § 1255 at 367–69 (1990).

The primary difficulty confronting the court is whether Ms. Mumphrey's statement that the case is one about "race and sex discrimination in employment" is enough to qualify as a "short and plain statement of the claim showing that [she] is entitled to relief," *see* Fed.R.Civ.P. 8(a)(2). The right-to-sue notice proffered as a complaint in *Baldwin County Welcome Center* evidently alluded to the fact that a charge had been brought before the EEOC but did not specify either the exact claim alleged or the factual basis for it. *See Baldwin County Welcome Center*, 466 U.S. at 153, 158–59, 163–64, 104 S.Ct. at 1726, 1729–30, 1731–32 (Stevens, J., dissenting). The *in forma pauperis* application in our case does specify the claim alleged but contains no information, except by generous inference, as to either the race or sex of the plaintiff or the acts of the defendant

purportedly amounting to discrimination. Nothing was filed as an attachment to the *in forma pauperis* application.

Under these circumstances, the court cannot in good conscience hold that the *in forma pauperis* application is adequate to be considered a "complaint." *See, e.g., Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir.1990) (*per curiam*), and *Lawrence v. Chairman, Equal Employment Opportunity Commission*, 728 F.Supp. 899, 902–03 (N.D.N.Y.1990); *see also Gardner v. U.S. Steel*, 670 F.Supp. 1411, 1414 n. 3 (N.D.Ind. 1987); *Fennell v. Svenska Amerika Linien A/B*, 23 F.R.D. 116, 117 (D.Mass.1958); and 5 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* 2d § 1216 at 154–59, 162–63 (1990). The court turns, then, to a consideration of whether the record supports the application of equitable tolling principles so as to extend the filing deadline to April 16, 1991, when Ms. Mumphrey's actual complaint was filed. *See Baldwin County Welcome Center*, 466 U.S. at 151, 104 S.Ct. at 1725.

## II.

■ The Supreme Court has suggested that equitable tolling may be appropriate when a plaintiff "has received inadequate notice" of the filing deadline, where "a motion for appointment of counsel is pending," where the defendant has engaged in "affirmative misconduct ... [that] lulled the plaintiff into inaction," or where "the court has led the plaintiff to believe that she ha[s] done everything required of her." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (*per curiam*). The only one of these circumstances even arguably applicable to Ms. Mumphrey is that relating to the court's actions through the clerk.

Other courts have permitted equitable tolling where a court clerk explicitly advised the plaintiff that the filing of a motion to proceed *in forma pauperis* would halt the running of the filing period, *see Gonzalez–Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F.2d 857, 859 (10th Cir.1983), and

where the judge unilaterally declared in the order granting *in forma pauperis* status that the case was to be considered as having been filed as of the file date of the *in forma pauperis* petition, *see Carlile v. South Routt School District, RE 3–J*, 652 F.2d 981, 986 (10th Cir.1981). One court has suggested that an *in forma pauperis* application accompanied by a right-to-sue notice might require equitable tolling. *See Gardner v. U.S. Steel*, 670 F.Supp. 1411, 1413 (N.D.Ind.1987). Another court has implied that the clerk's stamping "received" on a complaint might be sufficient to require equitable tolling. *See Bell v. Veterans Administration Hospital*, 654 F.Supp. 69, 70 (W.D.La.1987), *aff'd*, 826 F.2d 357 (5th Cir.1987).

None of those events, however, is alleged here. Ms. Mumphrey's affidavit says nothing that would permit the court to infer that the clerk misled her, or, indeed, even spoke with her about the pleadings she brought to be filed, and it is apparently undisputed that the *in forma pauperis* application had no attachments. Under these circumstances, the court must hold that equitable tolling is not appropriate in this case. The race and sex discrimination claims under Title VII are therefore dismissed with prejudice.[2]

### III.

Ms. Mumphrey's remaining claims are for breach of implied covenant of fair dealing, wrongful discharge, and outrage under state law. Since diversity exists between Ms. Mumphrey and defendant James River Paper, the court has independent jurisdiction of these claims, irrespective of the dismissal of the federal claims. *See* 28 U.S.C. § 1332(a)(1).

The court turns first to the question of whether any of these claims is preempted by federal labor law on account of the collective bargaining contract in effect at defendant James River Paper.[3] Federal power to preempt state law is derived from the supremacy clause in article VI of the Constitution, and federal power to legislate in the area of labor relations has long been established. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985). Congress has never exercised its authority, however, to occupy "the entire field in the area of labor legislation. Thus the question whether a certain state action is pre-empted by federal law is one of congressional intent." *Id.*

Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), states that suits for the violation of contracts between an employer and a union may be brought in the district courts. The Supreme Court has held that this provision authorizes the federal courts "to fashion a body of federal law for the enforcement of ... collective bargaining agreements." *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). Where a suit raises an issue that would be included in the scope of 29 U.S.C. § 185(a), therefore, that issue must be decided "according to the precepts of federal labor policy." *Local 174, Teamsters, Chauffeurs, Warehousemen, and Helpers v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). This is because the "dimensions of [29 U.S.C. § 185] require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute." *Id.*

The preemptive effect of 29 U.S.C. § 185(a) extends beyond suits alleging contract violations. *Lueck*, 471 U.S. at 210, 105 S.Ct. at 1910. Questions relating to "what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law," even if such questions arise in the guise of a breach-of-contract suit or a tort liability suit. *Id.* at 211, 105 S.Ct. at 1911. "The requirements of [29 U.S.C. § 185] ... cannot vary with

---

2. Given this resolution, it is unnecessary for the court to consider the issue of exhaustion of administrative remedies on the sex discrimination claim.

3. It is evidently undisputed that the collective bargaining agreement submitted by defendant James River Paper was in effect at the relevant time.

the name appended to a particular cause of action," *id.* at 220, 105 S.Ct. at 1916, and if evaluation of a claim is "inextricably intertwined with consideration of the terms of [a] labor contract," then federal labor law preempts any applicable state law, *id.* at 213, 105 S.Ct. at 1912.

■ If, however, evaluation of a claim depends not on an analysis of a labor contract but on an analysis of state law rights and obligations that cannot be "waived or altered by agreement of private parties," then federal labor law does not preempt that state law. *Id.* In other words, "as long as the [merits of the] state-law claim can be resolved without interpreting the agreement itself," the claim is not preempted. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 410, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988); *see also id.* at 413, 108 S.Ct. at 1885.

The collective bargaining agreement in effect at the relevant time at defendant James River Paper provides for a grievance procedure, to be followed by arbitration if the grievance is not settled. *See* 1987–1990 Labor Agreement, art. 5, § 4; art. 6, § 1. The arbitrator has the power to "interpret and apply" the terms of the agreement. *See id.*, art. 5, § 3. The arbitrator has the power to determine whether "disciplinary action" taken by the employer is "fair and just." *See id.*, art. 5, § 4. Such action by the employer may include reprimand, suspension, or dismissal. *See id.*, art. 5, § 1; art. 18, § 1.

The court believes that Ms. Mumphrey alleges, by implication or explicitly, the following acts as amounting to breach of implied covenant of fair dealing and wrongful discharge—the imposition upon her of a one-year probationary period, the imposition upon her of a requirement that she provide a doctor's excuse for any absences, the declaration that any absences without a doctor's excuse would be reviewed by the personnel department, the company's firing her on the last day of her probationary period, and the company's firing her with-

out just cause. *See* complaint, para. 7, paras. 21–23; Mumphrey affidavit, para. 15, paras. 17–18; Mumphrey Tr. 44–47. The court finds that all of these actions are implicated in the provisions for discipline and review of discipline included in the collective bargaining contract. The court holds, accordingly, that those claims are preempted by federal labor law and may be brought only through the procedures governed by 29 U.S.C. § 185(a).[4] *See, e.g., Lingle*, 486 U.S. at 410, 108 S.Ct. at 1883, and *Lueck*, 471 U.S. at 211, 213, 105 S.Ct. at 1911, 1912. Those claims are therefore dismissed.

To the extent that any of the actions listed above might also be construed as part of the outrage claim, those parts of that claim are also dismissed with prejudice. *See Farmer v. United Brotherhood of Carpenters and Joiners*, 430 U.S. 290, 302, 305, 97 S.Ct. 1056, 1064, 1066, 51 L.Ed.2d 338 (1977).

### IV.

■ Finally, the court considers whether the remaining parts of Ms. Mumphrey's claim for outrage are insufficient as a matter of law. To establish a claim for outrage, Ms. Mumphrey must present evidence of "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *See* AMI Civil 3d, 404. The emotional distress suffered as a result "must be reasonable and justified under the circumstances and must be so severe that no reasonable person could be expected to endure it." *Id.*

The court believes that a fair construction of the materials in the record reveals evidence to support the following remaining allegations as the basis for Ms. Mumphrey's outrage claim—her supervisor's sexual harassment of her in commenting on her clothing and physical appearance, her supervisor's accusing her of taking breaks without permission, her supervisor's

---

**4.** The court makes no finding as to whether Ms. Mumphrey is barred from suing under 29 U.S.C. § 185(a) because of failure to exhaust nonjudi- cial remedies or statutes of limitations, or for any other reason.

 

refusal to allow her to take certain breaks, her supervisor's sending her to certain areas of the plant and then accusing her of being in those areas without permission, her supervisor's requiring her to do certain work that she was not authorized to do, her supervisor's use of scrutiny so intensive as to make her nervous and to cause her to suffer extreme anxiety, and her supervisor's treating her differently from whites and men. *See* Mumphrey affidavit, paras. 5–14, para. 16; Mumphrey Tr. 20, 29, 34–35, 39, 48, 50–51, 60.

Judgments for outrage have been sustained and complaints upheld as stating a claim in Arkansas cases where an employee alleged that she was fired because she would not agree to her supervisor's demands for sexual favors and that her employer then represented in relation to her unemployment compensation claim that she had been fired for misconduct, *see Lucas v. Brown & Root, Inc.*, 736 F.2d 1202, 1206–07 (8th Cir.1984); where allegations were made that an employee with an outstanding record was intentionally dismissed on account of her age, *see Smith v. Southern Starr of Arkansas, Inc.*, 700 F.Supp. 1026, 1027–28 (E.D.Ark.1988); where, over a period of two years, the plaintiff was followed by the defendant and people hired by him, the defendant made repeated unwarranted complaints about how the plaintiff was doing his job, and the defendant made numerous threats to get the plaintiff fired, *see Hess v. Treece*, 286 Ark. 434, 440, 693 S.W.2d 792 (1985), *cert. denied*, 475 U.S. 1036, 106 S.Ct. 1245, 89 L.Ed.2d 354 (1986); and where an employee being questioned about alleged thefts from his employer was repeatedly denied the opportunity to take tranquilizing medication during the questioning even though he was highly agitated at the time, *see Tandy Corp. v. Bone*, 283 Ark. 399, 407–08, 678 S.W.2d 312 (1984).

The court holds, in light of this case law, that Ms. Mumphrey's affidavit and deposition are sufficient to create a genuine issue of material fact on her claim of outrage. The motion for summary judgment is

therefore denied as to the allegations listed above in relation to that claim.