Becky ISLAND *v.* BUENA VISTA RESORT
and George Bogdanov

02-713                                         103 S.W.3d 671

Supreme Court of Arkansas
Opinion delivered April 17, 2003

*Bachelor & Newell*, by: *Angela R. Echols*, for appellant.

*Farrar, Reis, Rowe, Nicolosi, Williams & Strause*, by: *Bryan J. Reis*, for appellees.

RAY THORNTON, Justice. On September 6, 2000, appellant, Becky Island, filed a complaint against appellees, Buena Vista Resort and George Bogdanov. In her complaint, appellant asserted that she was an employee of Buena Vista Resort and that Bogdanov was the owner of Buena Vista Resort [BVR]. The complaint further alleged that during her employment with Buena Vista Resort, Bogdanov approached her and propositioned her for sex. The complaint also alleged that

Bogdanov had made lewd comments to appellant on several occasions. Finally, the complaint alleged that when appellant rejected Bogdanov's sexual advances, she was treated poorly, and eventually terminated from her job.

Based on the factual allegations, appellant asserted three causes of actions. First, she alleged that appellee Bogdanov's behavior violated the Arkansas Civil Rights Act. Next, she argued that appellees' actions were outrageous and caused her to suffer severe emotional distress. Finally, she asserted that she was wrongfully discharged in violation of the public policy of the State of Arkansas.

On January 30, 2002, appellees filed a motion seeking summary judgment. An affidavit from Bogdanov was attached to their motion. In his affidavit, Bogdanov stated that the reason appellant was terminated was because he was going to give her job to his son. He also denied that he had solicited appellant for sex or treated her differently during her employment. In support of their motion for summary judgment, appellees also attached appellant's claim for unemployment benefits in which appellant stated that she was separated from her job because "[Bogdanov] brought [his] son back to run [the] business." Finally, appellees attached appellant's deposition testimony to their motion for summary judgment.

Appellees also filed a brief in support of their motion for summary judgment. In their brief, they argued that appellant admitted that she was terminated for reasons other than rebuffing Bogdanov's sexual advances. They asserted that appellant admitted that she was terminated: (1) because Bogdanov's son was going to take her job; or (2) because her friend allegedly took some pears from Bogdanov's pear tree.

Additionally, appellees argued that appellant's claim under the Arkansas Civil Rights Act "must fail." They argued that "the Act protects persons against discrimination based on their status, it establishes certain protected classes, specifically, race, religion, national origin, gender, and disability. However, as has been shown, the termination of the plaintiff had nothing to do with her gender, but instead to a gender-neutral reason."

Appellees also asserted that they were entitled to summary judgment on appellant's "tort-of-outrage" cause of action. They

argued that Bogdanov's behavior did not rise to the level of outrageous and that appellant did not suffer severe emotional distress.

On February 19, 2002, appellant responded to appellees' motion for summary judgment. Appellant asserted that there were outstanding factual issues and that therefore summary judgment was not proper. Specifically, she argued that the jury should be permitted to determine the reason for her termination. She also asserted that she had established: (1) a violation of the Arkansas Civil Rights Act; (2) a cause of action for the tort of outrage; and (3) a cause of action for wrongful discharge. Attached to her response were copies of her deposition, Bogdanov's deposition, an affidavit from Mary Caldwell, and appellees' answers to interrogatories.

In a brief in support of her response to appellees' motion for summary judgment, appellant argued that there were outstanding factual disputes that must be resolved by a jury. First, she argued that a jury must determine whether Bogdanov's behavior constituted sexual harassment in violation of the Arkansas Civil Rights Act. Next, she argued that the jury should determine whether appellant was terminated for rebuffing Bogdanov's sexual advances. Finally, she argued that a jury should determine whether Bogdanov's actions supported a claim for outrage.

In a response to appellant's response, appellees argued that sexual harassment is not covered by the Arkansas Civil Rights Act and that the trial court could not look to federal Title VII cases when considering appellant's cause of action under that Act. Appellant countered this assertion.

On March 5, 2002, a hearing was held on appellees' motion for summary judgment. On April 16, 2002, the trial court issued its findings of fact and conclusions of law. The trial court found that there were no genuine issues of fact, and granted appellees' motion for summary judgment. The trial court also found as a matter of law that appellant was terminated because Bogdanov wanted to rehire his son. Next, the trial court concluded that because appellant's termination was not based on her gender, she failed to establish a cause of action pursuant to the Arkansas Civil Rights Act. Additionally, the trial court found that appellees were entitled to summary judgment on the wrongful-termination cause of action because appellant was an at-will employee, and as such,

could be terminated at any time. Finally, the trial court found that appellees' actions did not support a claim of outrage.

It is from this order that appellant appeals. We conclude that there are unresolved questions of fact relating to appellant's civil-rights claim and wrongful-termination claim, and remand the matter for development of those issues.

In *Palmer v. Council on Economic Education*, 344 Ark. 461, 40 S.W.3d 784 (2001), we outlined the rules governing motions for summary judgment. We wrote:

> [W]e need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. Our rule states, and we have acknowledged, that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law.
>
> Once a moving party establishes a *prima facie* entitlement to summary judgment by affidavits or other supporting documents or depositions, the opposing party must demonstrate a genuine issue of material fact by meeting proof with proof. Furthermore, the moving party may present pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, to support the burden of showing entitlement to summary judgment as a matter of law.

*Id. (Citing Crockett v. Essex Home. Inc.*, 341 Ark. 558, 19 S.W.3d 585 (2000)). Additionally, in *Flentje v. First National Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000), we noted:

> [W]e will not engage in a "sufficiency of the evidence" determination. We have ceased referring to summary judgment as a drastic remedy. We now regard it simply as one of the tools in a trial court's efficiency arsenal; however, we only approve the granting of the motion when the state of the evidence as portrayed by the pleadings, affidavits, discovery responses, and admission on file is such that the nonmoving party is not entitled to a day in court, i.e., when there is not any genuine remaining issue

of fact and the moving party is entitled to judgment as a matter of law. *Id.* However, when there is no material dispute as to the facts, the court will determine whether "reasonable minds" could draw "reasonable" inconsistent hypotheses to render summary judgment inappropriate. In other words, when the facts are not at issue but possible inferences therefrom are, the court will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds might differ on those hypotheses.

*Flentje, supra.*

Guided by our rules governing the granting of summary judgment, we turn to appellant's first point on appeal. Appellant argues that the trial court erred when it determined that the Arkansas Civil Rights Act does not provide protection from workplace sexual harassment as a matter of law. The Arkansas Civil Rights Act, originally enacted in 1993, and codified at Ark. Code Ann. 16-123-101 *et seq.*, provides citizens of this State legal redress for civil-rights violations of State constitutional or statutory provisions, hate offenses, and discrimination offenses.

■ . We have not had an opportunity to determine whether workplace sexual harassment is covered under the Arkansas Civil Rights Act. However, the express language of the Act appears to forbid such behavior. Specifically, Ark. Code Ann. § 16-123-107 (Supp. 2001) provides:

> (a) The right of an otherwise qualified person to be free from discrimination because of race, religion, national origin, gender, or the presence of any sensory, mental, or physical disability is recognized as and declared to be a civil right. This right shall include, but not be limited to:
> (1) The right to obtain and hold employment without discrimination.

*Id.* This language may be interpreted as prohibiting discrimination such as workplace sexual harassment. However, because the Arkansas Civil Rights Act does not include language specifically prohibiting "workplace sexual harassment," we look to the federal courts for guidance. We have explained that our state courts may look to federal decisions for persuasive authority when considering claims under the Arkansas Civil Rights Act. *See Faulkner v. Arkansas Children's Hospital*, 347 Ark. 941, 69 S.W.3d 393 (2002);

*Rudd v. Pulaski County Special School District*, 341 Ark. 794, 20 S.W.3d 310 (2000); *Flentje, supra.*

Additionally, we note that the Arkansas Civil Rights Act expressly instructs us to look to federal civil-rights law when interpreting the Act. Specifically, Ark. Code Ann. § 16-123-105 (Supp. 2001) states:

> (c) When construing this section, a court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983, as in effect on January 1, 1993, which decisions and act shall have persuasive authority only.

Ark. Code Ann. § 16-123-105.

Because we have not had an opportunity to consider this issue, and because the Arkansas Civil Rights Act instructs us to look to federal civil-rights law when interpreting the Act, we look now to Title VII and federal cases interpreting Title VII for guidance on sexual-harassment claims brought pursuant to the Arkansas Civil Rights Act. The federal courts have recognized a cause of action for sexual harassment under the following Title VII language:

> It shall be an unlawful employment practice for an employer —
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1).

In *Henderson v. Simmons Foods Inc.*, 217 F.3d 612 (8th Cir. 2000), the Eighth Circuit Court of Appeals reviewed a sexual-harassment claim filed pursuant to the Arkansas Civil Rights Act. The Court of Appeals noted "claims premised under the Arkansas Civil Rights Act of 1993 are analyzed in the same manner as Title VII claims. *See* Ark. Code Ann. § 16-123-103(c)." *Henderson, supra.* Based upon its interpretation of our law, the Court of Appeals applied Title VII case law to Ms. Henderson's claim and determined that her employer had violated the Arkansas Civil Rights Act.

■ There are two distinct sexual-harassment claims which may be brought pursuant to Title VII. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986); *Smith v. Foote's Dixie Dandy, Inc.*, 941 F. Supp. 807 (E.D. Ark. 1995). A worker may claim that she was subjected to sexual harassment due to a hostile work environment or a worker may claim that she was subjected to sexual harassment based on *quid pro quo*.

■ The plaintiff in *Henderson, supra*, argued that she suffered sexual harassment due to exposure to a hostile work environment. The Court of Appeals explained that "Title VII forbids sexual harassment in the workplace and imposes liability upon employers who tolerate a hostile work environment." There are five elements that must be present to establish a hostile work environment sexual-harassment claim pursuant to Title VII. *Henderson, supra*. Specifically,

> [A] plaintiff asserting a hostile work environment claim must show (1) membership in a protected group or class, (2) unwelcome sexual harassment (3) based upon gender (4) resulting in an effect on a term, condition, or privilege of employment, and (5) that the employer knew or should have known about the harassment and failed to take proper remedial action. *See Staton v. Maries County*, 868 F.2d 996, 998 (8th Cir. 1989). In addition, the plaintiff must show that the sexual harassment created an environment that was both objectively and subjectively abusive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

*Henderson, supra.*

■ In *Smith v. Foote's Dixie Dandy, Inc., supra*, a case from the Arkansas Eastern District Federal Court in which a sexual-harassment claim was brought pursuant to the Arkansas Civil Rights Act and Title VII, the District Court explained:

> For a plaintiff [t]o make a *prima facie* case of *quid pro quo* harassment, [she] must show that (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) the harassment was based on sex; and (4) her submission to the unwelcome advances was an express or implied condition for receiving job benefits or her refusal to submit resulted in a tangible job detriment.

*Id.* (*Citing Cram v. Lamson & Sessions Co.*, 49 F.3d 466 (8th Cir. 1995) (internal citations omitted).

After reviewing the foregoing case law, we are persuaded that the trial court erred in determining that the Arkansas Civil Rights Act is not applicable to workplace sexual harassment.

Next, we must consider whether an issue of fact remains unresolved as to whether appellant was subjected to workplace sexual harassment. In the case now before us, appellant alleged in her complaint that "defendants' [Bogdanov's] behavior violated the plaintiff's rights in the workplace which are protected under the Arkansas Civil Rights Act." In support of this claim, appellant offered evidence of numerous facts. Appellant alleged that Bogdanov, who was her supervisor and owner of the business, offered to suspend her rent if she would have sex with him once a week. Appellant further alleged that Bogdanov asked if he could touch her breasts. She asserted that Bogdanov would also tell appellant about his sex life in "graphic detail" and that Bogdanov offered to purchase a car for her in exchange for sexual favors. Appellant also alleged that Bogdanov would frequently ask her to meet him at a hotel to engage in sexual activities. Appellant further alleged that Bogdanov made crude sexual comments to her while she was working. Finally, appellant alleged that when she firmly rebuffed Bogdanov, he treated her with disdain and she was terminated shortly thereafter.

In an affidavit attached to appellees' motion for summary judgment, appellee Bogdanov responded to appellant's allegations. He stated that he "never solicited sex from [appellant]. I never did anything more than comment favorably on her appearance."

In response to Bogdanov's denial, appellant offered Bogdanov's deposition. The following questions and answers from the deposition are relevant:

Q: [appellant's attorney] Did you ever offer her [appellant] money for sex?

A. [Bogdanov] I don't remember that I say that.

Q. Is it possible that you did?

A: I don't think, because I'm not a person that can have money.

\* \* \*

Q: Did you ever ask her to have sex with you?

A: I don't remember.

* * *

Q: What I'm asking you Mr. Bogdanov is if Ms. Island testifies to the fact that you did ask her to have sex with you, are you able to dispute that or will you dispute that?

A: I don't remember say that.

* * *

Q: Did you ever have conversations with her about your sex life with your wife?

A: I don't remember.

In addition to the deposition testimony, appellant offered the affidavit of Mary Caldwell, a former employee of Buena Vista Resort, in support of her sexual-harassment claim. In her affidavit, Ms. Caldwell stated:

> Mr. Bogdanov began making some inappropriate sexual comments to me. Then, after a while, he took his actions a step further and began trying to touch and/or kiss me. Mr. Bogdanov offered me money to have sexual relations with him. This occurred on numerous occasions. He repeatedly asked me for sexual favors, and I always told him no. After I would reject him, however, he would become very angry with me. After a while, however, he would begin talking to me again and would start his sexual propositions all over again. It was an endless cycle.
>     Mr. Bogdanov made comments about my body, including my breasts. He even made sexual comments about him and his wife's sexual relationship. Mr. Bogdanov would sit in the office and tell inappropriate nasty jokes.

> * * *

> Mr. Bogdanov tried to kiss me on more than one occasion, and I had to tell him no, which resulted in him becoming very angry with me. After I bought my new vehicle, a Toyota 4-Runner, Mr. Bogdanov offered to pay for it if I would have sex with him every week. I declined.

> * * *

> Other employees told [me] that Mr. Bogdanov acted in the same manner towards them. It was a very bad environment to work in,

and the worst part was that there was no one to report his behavior to. Since he was the owner, there was no way to stop the harassment.

After reviewing the foregoing depositions and affidavits, we conclude that there is a genuine issue of material fact which remains to be resolved. Specifically, we conclude that the issue of whether Bogdanov's actions constituted sexual harassment in violation of the Arkansas Civil Rights Act raises questions of fact. His actions must be evaluated and a question of fact remains whether appellant was subjected to sexual harassment because she was working in a hostile working environment. There are also disputed facts that must be resolved before determining whether appellant was subjected to sexual harassment by offers of *quid pro quo*. Because we conclude that there are unresolved factual issues, we reverse the trial court and remand this case for further development of those issues.

Before leaving this point, we note that appellees argue that because they are able to give a non-gender-based reason for appellant's termination, she is precluded from pursuing a sexual-harassment claim under the Arkansas Civil Rights Act. Appellees' contention is misplaced. A review of the elements that must be established to present a valid sexual-harassment claim do not require the termination of the harassed employee. In fact, an employee who is the subject of sexual harassment sometimes remains an employee after the harassment. A lack of termination, or a non-gender-based reason for the employee's termination, does not extinguish a harassed employee's cause of action. Accordingly, we conclude that the possible existence of a non-gender-based reason for appellant's termination is not determinative of her sexual-harassment claim.

In her second point on appeal, appellant argues that the trial court erred in granting appellees summary judgment as a matter of law on appellant's claim for wrongful discharge. Specifically, she argues that although she was an employee-at-will, her termination for an alleged refusal to engage in sex for compensation violated public policy, and as such, constituted wrongful discharge.

We have repeatedly held that when an employee's contract of employment is for an indefinite term, either party may terminate the relationship without cause or at will. *Sterling Drug,*

*Inc. v. Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988). However, we have also noted that an at-will employee cannot be terminated if he or she is fired in violation of a well-established public policy of the State, but such public policy must be outlined in our statutes. *Palmer, supra.* Finally, we have explained that an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the State. *Sterling Drug, supra.*

Considering the foregoing rules of law, we turn now to the case *sub judice.* In this case, appellant argues that summary judgment was not proper because there was a genuine issue of fact as to the reason for her termination. In her complaint, appellant alleged that "the defendants wrongfully discharged the plaintiff in violation of the public policy of Arkansas." In support of her contention, appellant asserted that "during the first week of September of 1999, the plaintiff had finally had enough [of unwanted sexual advances] and yelled at him [Bogdanov] to never speak dirty to her again. The defendant was caught off guard and said something in a foreign language and walked off. On September 9, 1999, the plaintiff was terminated from employment." The complaint further explains that prior to confronting appellant in September of 1999, Bogdanov had sexually propositioned her on several occasions. She alleged that Bogdanov offered to give her money to purchase a car and that Bogdanov offered to suspend her rent in exchange for sexual favors.

In an affidavit attached to their motion for summary judgment, Bogdanov stated that "I told the plaintiff that she was being terminated so that Sosh could return and run the business." Appellees also attached a notice from the Employment Security Department to their motion for summary judgment. In this notice, appellant states that she was terminated because "[appellee] brought [his] son back to run the business."

In appellant's deposition, which was attached to appellees' motion for summary judgment, she testified that appellee told her that she was being terminated so that Bogdanov's son Sosh could take her job. However, in her deposition, she also testified about the day that she confronted Bogdanov and stated that shortly thereafter she was terminated.

■ After reviewing the evidence, we conclude that there is a material question of fact that must be resolved. Specifically, we conclude that a factual issue of whether appellant was terminated in retaliation for rebuffing Bogdanov's sexual advances or whether she was terminated so that Bogdanov's son could take appellant's job remains to be resolved.

■ We further conclude that the public policy of the State of Arkansas prohibits the termination of at-will employees based on retaliation for rejecting solicitations to engage in sex in exchange for compensation. This position was fully discussed in *Lucas v. Brown & Root*, 736 F.2d 1202 (8th Cir. 1984), a case which we cited in *Sterling Drug, Inc., supra*. In *Lucas*, the Eighth Circuit Court of Appeals was asked to review plaintiff's wrongful-discharge claim which had been dismissed pursuant to Arkansas law. Ms. Lucas alleged that her supervisor had sexually propositioned her, and that when she rejected him, her employment was wrongfully terminated. Ms. Lucas's claim was brought pursuant to a breach-of-contract claim. After reviewing Ms. Lucas's claim, the Court of Appeals acknowledged our long-standing doctrine of employment at will. The Court of Appeals also explained that we recognized several exceptions to the basic rule that an employee at will can be terminated for any reason. The Eighth Circuit stated:

> The decisions of the Supreme Court of Arkansas establish two propositions: (1) that employees whose contracts are for no fixed term may ordinarily be discharged, just as they may ordinarily quit, for any reason or for no reason; and (2) that there are exceptions to this rule, coming into play when the reason alleged to be the basis for a discharge is so repugnant to the general good as to deserve the label "against public policy."

*Id.* After reviewing the public-policy exception to the employment-at-will doctrine, the Court of Appeals concluded that it was against the public policy of the State of Arkansas to terminate an employee for refusing to submit to sexual advances. The Court of Appeals continued:

> On this appeal we sit as just another court of the State of Arkansas, applying not our own private views of public policy (though no judge ever completely leaves them behind, because no person can), but the public policy of Arkansas as it has in the past been declared by the Supreme Court of the State and as we think it

will be declared by that Court in the future. What we know of the shared moral values of the people of Arkansas and the considerable clues to be found in positive law point alike to the conclusion that this complaint does state a claim. Prostitution is a crime denounced by statute. It is defined as follows:

> A person commits prostitution if in return for, or in expectation of a fee, he engages in or agrees or offers to engage in sexual activity with any other person.

Ark. Stat. Ann. §§ 41-3002(1) (Supp. 1983). It is at once apparent that the shoe fits. A woman invited to trade herself for a job is in effect being asked to become a prostitute. If this were a criminal prosecution, it might be argued that a job is not a "fee" within the meaning of this statute, and a court, applying the maxim that criminal statutes are to be strictly construed, might agree, holding that "fee" means only money, and not other things of value. But in this civil action no such narrow interpretation is required or appropriate. A wage-paying job is logically and morally indistinguishable from the payment of cash. Indeed, it necessarily involves the payment of cash.

*Lucas, supra.* Having concluded that the alleged wrongful termination violated public policy, the Court of Appeals held:

> Plaintiff should not be penalized for refusing to do what the law forbids. And if she can prove that this is in fact what happened, and that her employer is responsible for it, she can recover damages for breach of contract. For it is an implied term of every contract of employment that neither party be required to do what the law forbids.

*Id.* See also *Sterling Drug, supra* (discussing *Lucas* and its holding).

We find the reasoning in *Lucas* very persuasive, and have no hesitancy in following the Eighth Circuit's lead in holding that the public policy of the State of Arkansas is violated when an at-will employee is terminated for rejecting a solicitation to engage in prostitution. Accordingly, without expressing an opinion as to the reason for appellant's termination, we hold that if she was terminated for refusing Bogdanov's sexual propositions, appellant has a valid cause of action for wrongful termination.

In her third point on appeal, appellant argues that the trial court erred in granting appellees summary judgment on her tort-of-outrage claim. We have recognized a cause of action

for the tort of outrage in an employment setting. *See M.B.M. Co., Inc. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980). We have explained that liability [for the tort of outrage] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Palmer, supra. (Citing the Restatement (Second) of Torts* § 46 Cmt. d (1965)).

There are four elements that are necessary to establish liability for the tort of outrage: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002).

In the case now before us, appellant's allegations of outrage stem from appellee Bogdanov's sexual advances. As previously discussed, appellant's complaint alleged that Bogdanov engaged in the following behavior: (1) offering to suspend appellant's rent and/or to give appellant money for the purchase of a new automobile in exchange for sex; (2) asking to touch appellant's breasts; (3) telling appellant about his sexual relationship with his wife in "graphic detail;" (4) making "sexual comments" to appellant about her body; (5) asking appellant to find women to have sex with him; and (6) asking appellant to meet him at hotels to engage in sexual activities. In her complaint, appellant also alleged that "as a result of the defendant's behavior [she] did suffer severe emotional distress."

In their answer to appellant's complaint, appellees denied all of appellant's allegations. Additionally, in his affidavit attached to appellees' motion for summary judgment, appellee Bogdanov stated "the allegations against me by the plaintiff are untrue. I never solicited sex from her. I never did anything more than comment favorably on her appearance."

In her deposition testimony, appellant reiterated all allegations of Bogdanov's unwanted sexual advances and stated that based on

her termination, she was "depressed." In appellee Bogdanov's deposition testimony, he denied some of appellant's allegations and stated that he could not remember whether he had engaged in any of her other allegations. Finally, an affidavit offered by Mary Caldwell corroborated appellant's allegations of Bogdanov's improper sexual advances towards employees of Buena Vista Resort.

After reviewing the evidence, the trial court found:

> Considering the allegations of the plaintiff as true, the alleged emotional distress of the plaintiff was not severe so as to support a claim of outrage. The plaintiff did not state or allege any peculiar susceptibility to emotional distress on her part, and the effect on the plaintiff from the alleged conduct of the defendant, according to her deposition testimony was inconsequential. In particular, the plaintiff testified that the defendant sometimes treated her poorly for a short period of time after an incident, but otherwise the relationship was unaffected.

While it is clear that the allegations of Bogdanov's behavior are egregious, it appears that appellant has failed to offer proof that she suffered damages or emotional distress so severe that no reasonable person could be expected to endure it.

We have concluded that the factually disputed issue whether appellant was fired for refusal to engage in sex for compensation gives rise to a claim for wrongful discharge that will withstand a motion for summary judgment, and that appellant's showing of sexual harassment prohibited by the Arkansas Civil Rights Act was sufficient to withstand a motion for summary judgment. However, appellant does not show, by affidavit or other proof, that she has suffered damages or emotional distress so severe that no reasonable person could endure it. In fact, it appears that she did endure the alleged harassment for several years before she firmly rejected his alleged advances and yelled at him "to never speak dirty to [me] again." We conclude that appellant has not offered proof showing that as a result of Bogdanov's behavior she suffered that level of damages or emotional distress sufficient to sustain an action for the tort of outrage. Accordingly, we affirm the trial court on this issue.

In appellant's final point on appeal, she argues that the trial court "clearly erred when it accepted as true all of the facts

set forth by Mr. Bogdanov and BVR, and totally ignored the facts set forth by Ms. Island." This argument appears to be repeating arguments raised in appellant's previous points on appeal. Having concluded that summary judgment was not proper on two of appellant's causes of action, we agree with appellant's contention. Specifically, we hold that because there are unresolved fact questions the trial court erred when it granted appellees' motion for summary judgment.

We conclude that allowing appellant her day in court for the consideration of factual issues relating to her allegations of a violation of our civil-rights act, and a violation of our public policy against wrongful discharge for refusing to breach a statutory prohibition against prostitution is required to resolve the disputed facts remaining in this case. Therefore, we remand this case to the trial court for development of those issues.

Affirmed in part; reversed and remanded in part.

CORBIN, J., not participating.