# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1573

_____

LaDonna Joens,     *

        *

    Plaintiff - Appellant,     *

        *    Appeal from the United States

v.     *    District Court for the

        *    Northern District of Iowa.

John Morrell & Co.,     *

        *

    Defendant - Appellee.     *

_____

Submitted:  October 24, 2003

Filed:  January 14, 2004

_____

Before LOKEN, Chief Judge, LAY and HEANEY, Circuit Judges.

_____

LOKEN, Chief Judge.

LaDonna Joens brought this Title VII action against John Morrell & Co. for hostile work environment, sex discrimination, and discriminatory retaliation. See 42 U.S.C. § 2000e-2(a).  The district court[1] granted summary judgment for Morrell, dismissing all claims. Joens v. John Morrell & Co., 243 F. Supp. 2d 920, 951 (N.D. Iowa 2003).  Joens appeals the dismissal of her hostile work environment claim, arguing that she presented sufficient evidence that the harassing co-worker was a

_____

[1]The HONORABLE MARK W. BENNETT, Chief Judge of the United States District Court for the Northern District of Iowa.

supervisor and that Morrell ignored her repeated complaints of sex-based harassment. Reviewing the grant of summary judgment de novo, and viewing the evidence in the light most favorable to Joens, the non-moving party, we affirm. See Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 964 (8th Cir. 1999) (standard of review).

Joens was hired to work at Morrell's Sioux City meat packing plant in 1986. Beginning in 1990, she was employed in the "box shop," where she operated a machine that made boxes from flat sheets of cardboard. Joens worked the day shift, when box bottoms were made. A male employee operated the machine during the night shift, making box tops. Joens testified that she made three types of box bottoms for various production lines in the plant, including the kill floor, the cut floor, and the ham line. The foremen for the different production lines ordered boxes from the box shop. Joens testified that she was not told how many boxes of each type to make each day: "You don't know. You just have to play it by ear. . . . You just hope you make the correct decision." Morrell presented evidence that the superintendent of the day shift kill floor, Dennis Reitz, supervised the box shop, and that Joens's day-to-day box making activity was largely unsupervised. Joens testified that she thought Reitz was her immediate supervisor.

Joens alleges persistent sexual harassment by Herman Johnson, the day shift foreman of the cut floor line. Joens testified in a deposition that Johnson came to the box shop on almost a daily basis to abusively criticize her for not making enough boxes for the cut floor. Joens alleges that Johnson constantly swore, yelled at her, and accused her of not doing anything; that Johnson singled her out for this abusive criticism even when a male employee was helping her make boxes; and that the men who made box tops during the night shift were not subject to similar criticism. Joens further alleges that she repeatedly complained of Johnson's harassment to the union steward and to various Morrell supervisors, yet nothing was done and Johnson's abusive criticism continued for three years until Joens filed a charge with the Iowa Civil Rights Commission. Johnson was not deposed. In an affidavit submitted in

support of Morrell's summary judgment motion, he admitted going to the box shop two or three times a week to request more boxes or a different type of box for the cut floor. He denied swearing at Joens, constantly berating her, or treating her more harshly or differently than her male co-workers. Joens and Johnson had no personal relationship and no other contacts in the workplace.

As a woman, Joens is a member of a group protected under Title VII. To establish a hostile work environment claim, Joens must show that she was subjected to unwelcome sex-based harassment that was sufficiently severe or pervasive to alter a term, condition, or privilege of her employment. Schoffstall v. Henderson, 223 F.3d 818, 826 (8th Cir. 2000). If she makes that showing, and if the harassment was committed by a co-worker, Joens must also establish that Morrell "knew or should have known of the conduct and failed to take proper remedial action." Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 987 (8th Cir. 1999). On the other hand, if the harassment was committed by an employee who supervised Joens, Morrell as her employer is vicariously liable for the harassment unless it can establish the affirmative defense defined in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998). In granting summary judgment in favor of Morrell, the district court concluded that Johnson was a co-worker, not a supervisor, for these purposes.

In Ellerth and Faragher, the Supreme Court did not answer the question, "who is a supervisor?," other than to state that an employer is vicariously liable "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the [victimized] employee." Ellerth, 524 U.S. at 765. We have not yet addressed that question. See Todd v. Ortho Biotech, Inc., 175 F.3d 595, 598 (8th Cir. 1999). The decisions of the few circuits to address the question are not entirely consistent. The majority hold that, to be a supervisor, the alleged harasser must have had the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote, or

-3-

reassign to significantly different duties. See Hall v. Bodine Elec. Co., 276 F.3d 345, 355 (7th Cir. 2002); Mikels v. City of Durham, 183 F.3d 323, 333-34 (4th Cir. 1999). By contrast, the Second Circuit recently adopted a somewhat broader standard, concluding that an alleged harasser is a supervisor for these purposes if he possessed "authority to direct the employee's daily work activities," even if he otherwise lacked the power to take tangible employment action against the victim. Mack v. Otis Elevator Co., 326 F.3d 116, 127 (2d Cir.), cert. denied, 124 S. Ct. 562 (2003). After carefully analyzing the Ellerth and Faragher decisions, the district court adopted the narrower standard of Hall and Mikels. Joens, 243 F. Supp. 2d at 934-41.

On appeal, Joens argues that summary judgment on this issue was improper because she submitted evidence that Johnson "had some supervisory authority over Joens because he could write her up for violation of company policies or failing to perform her work" and "could provide her with additional work." We disagree. Johnson was a foreman on one of the production lines served by the box shop. Within the plant, he was a customer of the box shop with no direct authority to control the work of its employees. Like any irate customer, Johnson could demand that Joens make more boxes for his cut floor line, and he did. But Joens testified that she had discretion to decide which boxes to make. And even if Johnson succeeded in getting Joens to make more boxes for the cut floor on a particular day, there is simply no evidence that the result was "additional work" for Joens. Thus, Joens's testimony tends to show only that Johnson, by being abusive, may have received more than his fair share of the boxes made by Joens. That is not equivalent to supervisory authority over his alleged victim. In addition, while the summary judgment record reflects that all foremen had the authority to "write up" hourly employees for failing to do their job, the power to discipline lay with Morrell's Human Resources Department. There is no evidence that Johnson ever "wrote up" Joens or otherwise complained to management about her job performance. In these circumstances, we agree with the district court that the summary judgment record could not reasonably support a finding that Johnson was Joens's supervisor.

Alternatively, Joens argues that, if Johnson was a co-worker rather than a supervisor, summary judgment was improper because Joens presented sufficient evidence that Morrell ignored her repeated complaints of harassment. As the district court recognized, the critical question is whether Joens complained to Morrell about *sex-based* harassment. See Joens, 243 F. Supp. 2d at 943; cf. Jacob-Mua v. Veneman, 289 F.3d 517, 523 (8th Cir. 2002).

Johnson supervised the cut floor production line. He visited the box shop for no more than a few minutes per day. Johnson never physically threatened Joens. He made no sexual advances or comments to Joens, and they had no contact other than Johnson's allegedly abusive complaints that Joens was not making enough boxes for the cut floor. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Accepting as true Joens's testimony that Johnson punctuated his complaints with yelling and swearing that Joens found offensive, she nonetheless failed to show that his conduct was so extreme as "to amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788; see Duncan v. Gen. Motors Corp., 300 F.3d 928, 931-34 (8th Cir. 2002), cert. denied, 123 S. Ct. 1789 (2003). "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." Scusa, 181 F.3d at 967.

Nor did Joens present probative evidence that Johnson's alleged harassment was based on her sex. Joens testified that, on the rare days when she was given a male helper, Johnson yelled and swore only at her. But it is undisputed that his complaints were aimed at getting more boxes for the cut floor. Thus, it is not surprising they were addressed to Joens, the person who was operating the box-making machine. Joens also testified that the men who made box tops on the night shift were not subjected to comparable criticism. But there is no evidence Johnson ever worked the night shift, so this testimony does not show that he treated Joens

differently because of her sex. When asked at her deposition what made her suspect Johnson's criticism was based on her sex, Joens replied, "[T]here was times when I had just made the boxes that he asked for, and he'd say that there was none over there, and I had just filled it up." Particularly given the gender-neutral nature of Johnson's complaints, this constitutes nothing more than an unsubstantiated suspicion that Johnson's allegedly abusive treatment was based on sex. Thus, we doubt whether Joens presented sufficient evidence that Johnson's behavior, however inappropriate, was based on Joens's sex. See Schoffstall, 223 F.3d at 826-27. And there is simply no evidence that Joens ever complained to Morrell that Johnson was yelling and swearing at her on account of her sex, as opposed to her work performance, or that he treated her less favorably than he treated male employees.

For the foregoing reasons, we conclude that summary judgment was properly granted dismissing Joens's hostile work environment claim. Accordingly, the judgment of the district court is affirmed.

_____