# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3199

_____

| | | |
|---|---|---|
| Monika Cheshewalla, Aaron Paul | * | |
| Michaels, Robert J. Petkoff, | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| Rand & Son Construction Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 15, 2005
Filed: July 19, 2005

_____

Before WOLLMAN, HANSEN, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Monika Cheshewalla, Aaron Michaels, and Robert Petkoff appeal from the district court's[1] grant of summary judgment on their Title VII employment-related claims. See 42 U.S.C. § 2000 *et seq*. Cheshewalla asserts sexual harassment and retaliation claims, while the latter two plaintiffs assert only retaliation claims. We affirm.

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

## I.

Rand & Son Construction Company (Rand) provides construction services for various client companies, including Allied Honeywell (Honeywell), a defense contractor. Rand employees working at Honeywell were required to have a badge for security purposes. A red badge indicated that the individual was "uncleared," or lacked security clearance, and therefore had to be accompanied by a security guard. A yellow or blue badge indicated that the individual was cleared. The process of obtaining such clearance was complicated and could take up to eighteen months. In the event of a reduction in force, Honeywell preferred that Rand retain employees with blue or yellow badges over those with red badges. The plaintiffs, Rand employees, were assigned to Honeywell's maintenance project. Most Rand employees working at Honeywell were either carpenters or laborers. Michaels and Petkoff were hired in 2000, the former as a carpenter apprentice and the latter as a carpenter. Cheshewalla was hired as a laborer in the same year. All three plaintiffs were uncleared, having only red badges.

Since approximately 1995, Michael Gibbins served as foreman for the laborers at Honeywell, while Danny Franks served as the foreman for the carpenters. In these capacities, Franks indicated to Gibbins the work to be performed by the laborers. Dave Burke, the lead foreman stationed at the site, was above Franks and Gibbins in the chain of command. Ernest Patires, Rand's Vice President, served as the project manager for the Honeywell site, but was not stationed there.

On November 3, 2000, two female Honeywell employees reported to Linda Christian, Rand's EEO Officer, that one of Rand's employees was exposing himself to women. Christian's investigations led her to believe that Cheshewalla was being subjected to this behavior, and she contacted Cheshewalla and the three other female laborers working at Honeywell to obtain more information. Cheshewalla denied that anything had happened to her, but expressed her fear that she ran the risk of being fired by talking to Christian. Christian told Cheshewalla that she would not be fired

for speaking to her. Christian did not learn who was exposing himself, and none of the women stated that they had been subjected to this display. Christian closed the file on this issue on November 16, 2000. Approximately three days later, a man, now known to be Petkoff, anonymously telephoned Christian and stated that Gibbins was harassing women. Petkoff did not specify which women or what Gibbins was doing to harass them. Gibbins was transferred to another job site the day of the telephone call. Petkoff and Michaels later complained about Gibbins's conduct to Burke, Franks, Christian, and Patires.

On approximately January 8, 2001, Gibbins was reassigned to the Honeywell site. On January 11, Christian heard rumors that Gibbins had been asking Cheshewalla for a date and that they were driving to work together. Hours later, Gibbins reported to Christian that he had heard rumors that he had sexually harassed Cheshewalla. The next day, Petkoff confronted Gibbins about Gibbins's treatment of Cheshewalla, and the labor union registered a sexual harassment complaint by Cheshewalla against Gibbins. The labor union's business agent, Les Williams, attempted to meet with the people involved, but Cheshewalla failed to attend. Gibbins was once again transferred from the Honeywell site, never to return. On January 16, Cheshewalla met with Christian and Patires, and told them that Gibbins had been harassing her.

It is undisputed that the need for layoffs in the maintenance project arose in January of 2001. Rand's business is cyclical. The workload is lowest at the beginning of each year when the funding for government contracts has yet to be received. Therefore, layoffs commonly arose each year at this time. Michaels and Petkoff were laid off on January 29. Cheshewalla missed work on the last two days of January and on seven days in early to mid February. On February 16, the last of these nine days of absence, Patires informed Cheshewalla by telephone that she had been laid off.

## II.

We review *de novo* the district court's grant of summary judgment. <u>Shanklin v. Fitzgerald</u>, 397 F.3d 596, 602 (8th Cir. 2005). We view the evidence in the light most favorable to the non-moving party and conclude that summary judgment was proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Id.</u>; Fed. R. Civ. P. 56(c).

Cheshewalla claims that she was subjected to a hostile work environment on the basis of sexual harassment by Gibbins. To establish a hostile work environment claim, Cheshewalla "must show that she was subjected to unwelcome sex-based harassment that was sufficiently severe or pervasive to alter a term, condition, or privilege of her employment." <u>Joens v. John Morrell & Co.</u>, 354 F.3d 938, 940 (8th Cir. 2004). Assuming, *arguendo*, that the alleged harassment was sufficiently severe to state a claim of hostile work environment, we turn to the question whether Gibbins is properly considered a co-worker or a supervisor. If the former, Cheshewalla must also show that Rand "'knew or should have known of the conduct and failed to take proper remedial action.'" <u>Id.</u> (quoting <u>Dhyne v. Meiners Thriftway, Inc.</u>, 184 F.3d 983, 987 (8th Cir. 1999). If the latter, Rand "is vicariously liable for the harassment unless it can establish the affirmative defense defined in <u>Burlington Indus., Inc. v. Ellerth</u>." <u>Joens</u>, 354 F.3d at 940; <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807-08 (1998) (noting that the affirmative defense is available only when no tangible employment action is taken). Because we conclude that Gibbins was not a supervisor, we do not discuss the affirmative defense.

In <u>Joens</u>, we held that to be considered a supervisor, "the alleged harasser must have had the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote, or reassign to significantly different duties." <u>Joens</u>, 354 F.3d at 940. <u>See also</u> <u>Weyers v. Lear Operations Corp.</u>, 359 F.3d 1049, 1057 (8th Cir. 2004). Gibbins, as foreman, could not hire, fire, or promote the laborers, nor could he assign them to a different job site.

Patires possessed this authority and although he may have consulted with Gibbins on such matters, the record is clear that Gibbins lacked any such authority. Cf. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 747 (1998) (where the alleged harasser was "a midlevel manager[,] …was a vice president in one of five business units[, and] …had authority to make hiring and promotion decisions subject to the approval of his supervisor"); Faragher, 524 U.S. at 807 (discussing vicarious liability of the employer for harassment by a supervisor "with immediate (or successively higher) authority over the employee"). The fact that Patires was not present at the Honeywell site is irrelevant under the definition of supervisor established in Joens. Finally, Cheshewalla's belief that Gibbins possessed the authority of a supervisor does not alter our conclusion in this case. See Weyers, 359 F.3d at 1057 n.7 (noting that the alleged harasser's "apparent authority would be an insufficient basis to support a finding of supervisor status").

Because Gibbins is considered a co-worker under the test set forth in Joens, Cheshewalla's claim is without merit unless she can demonstrate that Rand knew or should have known of the harassment and failed to take proper remedial action. See Dhyne, 184 F.3d at 987. The record demonstrates that Rand attempted to determine at the outset what, if any, harassment was ongoing by requiring Christian to investigate and then took remedial action by reassigning Gibbins to another job site solely on the basis of an anonymous telephone call. Christian contacted the female laborers at the Honeywell site and told them they could call her at work or at home. Christian encouraged Cheshewalla to speak with her, telling Cheshewalla that she would not be fired for speaking to her. In January 2001, Christian learned, after considerable effort, that Gibbins was reportedly harassing Cheshewalla and it was then that Christian and Williams received this information from Cheshewalla. Gibbins was permanently transferred from the Honeywell site on the basis of the reports, before Cheshewalla had confirmed the reports directly. Moreover, Cheshewalla did not report any harassment occurring after January 11, when Christian was first alerted that it was in fact Cheshewalla who was being harassed.

-5-

Cheshewalla has not made any of the showings required in order for her to prevail on this issue.

### III.

Cheshewalla further claims that Rand retaliated against her for reporting that Gibbins sexually harassed her. To make out a prima facie case of retaliation under Title VII, Cheshewalla must show that: (1) she engaged in statutorily protected conduct; (2) there was an adverse employment action; and (3) a causal connection exists between this conduct and the adverse action. Sallis v. University of Minn., 408 F.3d 470, 477 (8th Cir. 2005). The first two elements are established by Cheshewalla's complaint to Christian and others, and her layoff. A material issue of fact has not been raised, however, with regard to a causal connection between Cheshewalla's complaints and her layoff.

Cheshewalla has supplied no evidence of retaliation other than the fact that she was laid off exactly one month after reporting that Gibbins had sexually harassed her. The four-week interval between Cheshewalla's complaint and her layoff is insufficient to establish a showing of causal connection, given the other facts of this case. We have held that "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation," Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc), although in some cases we have held close temporal proximity to be sufficient as a matter of law to demonstrate causal connection. See, e.g., Couty v. Dole, 886 F.2d 147, 148 (8th Cir. 1989). Two events that occurred between the protected conduct and the layoff bring this case within the reach of Kiel. Cheshewalla missed many days of work and was in fact laid off on a day when she was skipping work, and Rand was undergoing a period of layoffs and reduced work availability. We conclude here, as we did in Kiel, that the intervening events "eroded any causal connection" suggested by the temporal proximity of Cheshewalla's protected conduct and her layoff. 169 F.3d at 1136. With regard to the reduction in the workforce that had been ongoing in the weeks before Cheshewalla was laid off,

company policy dictated that uncleared laborers, such as Cheshewalla, should be the first types of employees to be laid off. Moreover, Rand evinced a willingness to transfer Gibbins to another job site, the first time on an anonymous tip, and the second time on more reliable information. Without any evidence of retaliation, it simply does not follow that Rand would take all appropriate actions (e.g., transferring Gibbins), wait a month, and then decide to lay off Cheshewalla in retaliation for her complaint. Under these circumstances, temporal proximity alone does not allow Cheshewalla to prevail, because no reasonable jury could conclude from this scant evidence that Rand had retaliated against her.

Whether we cabin our examination of these intervening events under the third element of the prima facie case or under the subsequent step of the defendant's legitimate, nondiscriminatory reason for its actions, see Peterson v. Scott County, 406 F.3d 515, 524 (8th Cir. 2005), the result is the same.

The fact that Cheshewalla was not later rehired when Rand had work to offer does not raise an issue of material fact. No explanation need be given for the failure to rehire an employee who was laid off on the day of her ninth absence from work within a short period of time. Regardless of whether Cheshewalla's departure was labeled a layoff or a termination, no causal connection between the protected activity and adverse employment action has been shown.

## IV.

Michaels and Petkoff allege that Rand retaliated against them for reporting that Gibbins was sexually harassing Cheshewalla. Neither the plaintiffs' brief nor the district court's opinion addresses the element of causal connection required to make out a prima facie case of retaliation. Based upon our review of the record, we find their claims too attenuated to withstand summary judgment, for there is a notable absence of any evidence tying their reports of sexual harassment to their layoffs and

subsequent predicament of not being rehired.[2]  As with Cheshewalla, there is a relatively close temporal proximity between their protected conduct and their layoffs. Yet again, this appears to be a mere coincidence, as the usual January reduction in force was ongoing and plaintiffs' red badge status dictated that they be disfavored in the process.  Michaels's and Petkoff's disfavored status notwithstanding, three journeymen carpenters had already been laid off before January 29, 2001.

The district court's thorough analysis of why Rand's rationales for laying off and not rehiring Michaels and Petkoff are not pretexts would make their claims unavailing had a prima facie case been made out.  We conclude, however, that such an analysis is unnecessary, given that the plaintiffs have not carried their initial burden in this regard.

The judgment is affirmed.

_____

---

[2] We have considered plaintiffs' contention that Franks's response to a question constituted evidence of retaliation and conclude that it is without merit.