# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2952

_____

Mytosha Merritt,      *

            *

         Plaintiff/Appellant,     *

            *    Appeal from the United States

     v.                *    District Court for the

            *    Western District of Arkansas.

Albemarle Corporation,     *

            *

         Defendant/Appellee.     *

_____

Submitted: May 18, 2007
Filed: August 6, 2007

_____

Before WOLLMAN, BRIGHT, and JOHN R. GIBSON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Mytosha Merritt appeals from the district court's[1] order granting summary judgment in favor of Albemarle Corporation (Albemarle), on her claim that she had been constructively discharged in violation of the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, *et seq.* We affirm.

_____

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

I.

Merritt worked for Shaw Group, Inc. (Shaw), an employee leasing company. After working for approximately four months as a general laborer, she was assigned to work at Albemarle's brine plant as a lubrication technician in the lubrication subgroup of Albemarle's Predicative Maintenance/Preventive Maintenance Group (PM/PD Group). The PM/PD Group was responsible for maintaining equipment such as pumps and compressors. The lubrication subgroup was responsible for changing the oil in the pumps and other equipment. Sometimes changing the oil would require two individuals; sometimes it would require only one.

In the lubrication subgroup, Merritt worked with Eric Eades, another individual from Shaw, and Greg Dodson, an Albemarle employee. Both Merritt and Eades were lubrication technicians. Dodson was a reliability technician. Merritt considered Eades to be an unsafe worker because, when changing the oil on equipment (including sulphuric acid pumps), Eades sometimes neglected to lock out and tag out the machine. Dodson and the individual in charge of the PM/PD Group, Jason Bitting, testified in their depositions that the lock-out/tag-out procedure involves cutting off the energy to a machine. The procedure prevents equipment (many of the machines are automated) from restarting automatically and moving unexpectedly, which could catch an employee by surprise. Bitting acknowledged that exposure to sulphuric acid was within the range of possible hazards if something unexpected and out of the ordinary occurred. In her deposition, Merritt contended that failing to perform the lock-out/tag-out procedure is "very dangerous" because "pressure could build up, chemicals could leak, burn up a pump or burn up a compressor, anything."[2] Merritt testified that it was sometimes necessary to not follow the procedure. On such occasions, permission was required, as well as knowledge of "what was going on with

[2]Merritt does not appear to advance this theory on appeal. Instead, she argues that there is a danger of moving machine parts and a risk of exposure to sulphuric acid.

-2-

that particular piece of equipment." Merritt acknowledged that she had sometimes changed oil on machines without first locking out or tagging out the equipment, but contends that she had been granted permission to omit the procedure. Others, including Eades and Eades's predecessor, had also omitted the procedure with permission. Merritt could recall four or five occasions on which Eades, lacking permission, omitted the procedure. When Merritt worked with Eades, she would try to double-check to see if the equipment had been locked and tagged out. She was unable to do so on every occasion, however, because she and Eades would sometimes be separated by a short distance when they worked together.

On one occasion, Merritt refused to perform a task because Eades had not locked out or tagged out the equipment.[3] Dodson spoke with Eades and told him to lock out and tag out the machine. Eades complied. There is nothing in the record indicating that Eades had failed to comply with the lock-out/tag-out procedure thereafter.

Approximately three or four months after Merritt had started in the lubrication subgroup, Dodson began making unwelcome sexual advances toward her. When she resisted these advances, Dodson threatened to contact her supervisors at Shaw and have her fired. In the face of this pressure, Merritt succumbed, and they had sexual relations. On numerous subsequent occasions, Dodson continued to pressure Merritt to have sexual relations with him, threatening her job and threatening to assign her to work with Eades, whom he knew Merritt considered dangerous. Merritt testified that when she resisted Dodson's advances he would assign her to work with Eades. Although Merritt and Eades were the only two lubrication technicians, Dodson would occasionally change the oil on equipment as well. Consequently, on tasks requiring two people, Dodson could have assigned himself to work with Merritt or Eades, thus

---

[3]Apparently, Eades had been told by an operator that it was not necessary to lock out or tag out that particular pump.

preventing Merritt from having to work with Eades. Merritt also testified that she could elect to work alone (presumably leaving Dodson to work with Eades on two-person jobs) unless Dodson chose to intervene and assign her to work with Eades, which he did on a regular basis.

Merritt was distraught over her situation and began to take up drinking. She did not tell anyone about the harassment until June 16, 2004, when she told Bitting that Dodson had been pressuring her to have sex with him. When Bitting asked Merritt whether she wanted to tell Shaw about this, Merritt declined, stating that she was not emotionally capable of doing so. Merritt then walked out and never returned.

Merritt filed this action against Albemarle and Dodson in the Circuit Court of Columbia County, Arkansas. The case was subsequently removed to federal district court under 28 U.S.C. §§ 1441(a) and 1332(a), and Dodson was dismissed from the case. The district court granted Albemarle's motion for summary judgment, concluding that because there was no evidence that Dodson was Merritt's supervisor or that Albemarle knew or should have known of Dodson's alleged conduct, Albemarle was entitled to judgment as a matter of law.[4]

## II.

We review the district court's order granting Albemarle's motion for summary judgment *de novo*. Ferguson v. United States, 484 F.3d 1068, 1072 (8th Cir. 2007) (citation omitted). Summary judgment is appropriate when the evidence viewed in the light most favorable to the nonmoving party presents no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fischer v. Andersen Corp., 483 F.3d 553, 556 (8th Cir. 2007).

---

[4]The district court assumed for purposes of the summary judgment motion that Albemarle was Merritt's employer.

Although Merritt's claim is based on Arkansas law, we review cases arising under the Arkansas Civil Rights Act of 1993 in the same manner as Title VII claims. Henderson v. Simmons Food, Inc., 217 F.3d 612, 615 n.3 (8th Cir. 2000) (citation omitted); Island v. Buena Vista Resort, 103 S.W.3d 671, 675-76 (Ark. 2003) (stating that Arkansas courts will look to "Title VII and federal cases interpreting Title VII for guidance on sexual-harassment claims brought pursuant to the Arkansas Civil Rights Act"). Merritt must show that she was "'subjected to unwelcome sex-based harassment that was sufficiently severe or pervasive to alter a term, condition, or privilege of her employment.'" Cheshewalla v. Rand & Son Constr. Co., 415 F.3d 847, 850 (8th Cir. 2005) (quoting Joens v. John Morrell & Co., 354 F.3d 938, 940 (8th Cir. 2004)), *cert. denied*, 546 U.S. 1091 (2006).

If this threshold is met, we must determine whether Dodson was a co-worker or a supervisor. If Dodson was a co-worker, Merritt must show that Albemarle "'knew or should have known of [Dodson's] conduct and failed to take proper remedial action.'" Joens, 354 F.3d at 940 (quoting Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 987 (8th Cir. 1999)). If, however, Dodson was Merritt's supervisor, Albemarle "is vicariously liable for the harassment unless it can establish the affirmative defense defined" in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998). Id.

"[T]o be considered a supervisor, 'the alleged harasser must have had the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote, or reassign to significantly different duties.'" Weyers v. Lear Operations Corp., 359 F.3d 1049, 1057 (8th Cir. 2004) (quoting Joens, 354 F.3d at 940). The fact that an alleged harasser may have been a "team leader" with the authority "to assign employees to particular tasks" will not be enough to make that person a supervisor. Id. (holding that the fact that the alleged harasser may have been a team leader who was responsible for ensuring that an assembly line ran

according to schedule and assigned tasks on the line – which had an impact on the employees' training – was not enough to make that person a supervisor).

Dodson lacked the authority to take such tangible employment actions as hiring, firing, or promoting Merritt. Nor could he assign her to significantly different duties. In other words, Dodson was not empowered to effect "a significant change in [Merritt's] employment status," and lacked the authority "to make economic decisions affecting other employees." Pa. State Police v. Suders, 542 U.S. 129, 144 (2004) (quotation omitted). His authority was restricted to assigning Merritt to work on various tasks that were part of her work duties; sometimes with Eades. This authority, which was no greater than that possessed by the team leader in Weyers, was not sufficient to make Dodson a supervisor.

Merritt contends that Dodson was a supervisor because he had the power to assign her to work with an unsafe co-worker. In making this argument, she relies upon the Supreme Court's decision in Suders, which quotes language from the First Circuit suggesting that giving someone "'an extremely dangerous job assignment to retaliate for spurned advances'" may constitute a tangible employment action. Suders, 542 U.S. at 150 (quoting Reed v. MBNA Mktg. Sys. Inc., 333 F.3d 27, 33 (1st Cir. 2003)). Merritt thus contends that Dodson was her supervisor because he had the power to take tangible employment action against her by giving her the "extremely dangerous job assignment" of working with Eades. This argument is unavailing. Merritt offers no support for the suggestion that scheduling her to work with Eades should be considered a job assignment (extremely dangerous or otherwise) triggering vicarious liability on the part of Albemarle, rather than a mere assignment to particular tasks. There is no indication, for example, that Dodson's assignments were "documented in official company records" or were "subject to review by higher level supervisors." Id. at 144-45 (quotation omitted), which are circumstances that typically accompany a tangible employment action. Accordingly, even if a hazardous job assignment may, in some cases, constitute a tangible employment action indicative of

supervisory authority (a question we need not resolve today), we are not convinced that Dodson's authority to assign Merritt to work on tasks with Eades sufficed to make him a supervisor. We note, moreover, that the language upon which Merritt relies was dicta in both <u>Reed</u> and <u>Suders</u>, as in neither case was the quoted language material to the resolution of the issues before those respective courts. In light of the foregoing, we conclude that <u>Suders</u> does not support Merritt's contention that Dodson was her supervisor. Moreover, because Dodson was simply a co-worker, Merritt's other citations to <u>Suders</u> do not materially assist her. <u>Cf.</u> <u>Suders,</u> 542 U.S. at 143 n.6 ("<u>Ellerth</u> and <u>Faragher</u> expressed no view on the employer liability standard for co-worker harassment. Nor do we.").

Merritt also suggests that she was not afforded the opportunity to conduct discovery pertaining to various factual issues that Albemarle discusses on appeal, arguing that these matters were neither raised by Albemarle's motion for summary judgment nor addressed by the district court. We reject this argument. Although the factual issues relevant to this appeal could have been articulated with greater fullness and specificity, we believe that they were sufficient to apprise Merritt whether further discovery would have been helpful. Finally, we reject Merritt's invitation to adopt a broader definition of supervisor, as this court has already settled upon the definition reflected in <u>Joens</u>.

In sum, under <u>Weyers</u>, Dodson's authority to assign Merritt to particular tasks was not sufficient to make him a supervisor. Accordingly, because Dodson was not her supervisor, Merritt was required to show that Albemarle either knew of or should have known of Dodson's conduct. Since there is no evidence to this effect, summary judgment was appropriate.

The judgment is affirmed.

_____