# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3936

_____

DeDe Engel,                                    *
                                               *
              Appellant,                       *
                                               *   Appeal from the United States
        v.                                     *   District Court for the
                                               *   District of South Dakota.
Rapid City School District,                    *
                                               *
              Appellee.                        *

_____

Submitted: June 15, 2007
     Filed:  November 9, 2007

_____

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

        DeDe Engel brought claims against the Rapid City School District ("RCSD")
alleging sex discrimination under both Title VII and South Dakota law, based on a
hostile work environment created by a co-worker's sexual harassment. She also
brought a constructive discharge claim under Title VII, and state-law claims alleging
negligent hiring, supervision, and retention of the co-worker, and negligent or
intentional infliction of emotional distress. The district court granted RCSD's motion
for summary judgment on the sex discrimination claims, concluding as a matter of law
that Engel could not show that RCSD had failed to take appropriate action to remedy
the co-worker's harassment. The court also ruled that Engel presented insufficient

evidence to survive summary judgment on her constructive discharge claim. The court dismissed the other state-law claims without prejudice. *See* 28 U.S.C. § 1367(c)(3).

Engel appeals the grant of summary judgment for RCSD. She also appeals an order of the district court quashing her notice of deposition for Michael Hickey, RCSD's attorney. We affirm in part, reverse in part, and remand for further proceedings.

I.

Because we are reviewing a grant of summary judgment, we describe the facts in the light most favorable to Engel. From 1997 to 2004, Engel worked for RCSD, first as a technology secretary and later as an instructional and network technology associate. During her employment with RCSD, Engel regularly encountered David Herrera, a non-supervisory co-worker. In about 2000, Herrera began sexually harassing Engel. Among other actions, Herrera asked Engel the color of her undergarments and commented on her buttocks. He once asked her to feel his penis. He also harassed other female co-workers.

RCSD learned of Herrera's behavior in March 2003, when Jamie Volk, another RCSD employee, complained about Herrera to her supervisor. After Volk made this complaint, Engel was asked by a supervisor if she had been harassed by Herrera. She said that she had been harassed and completed a written complaint describing the harassment. In response, RCSD suspended Herrera on March 6 and launched an investigation. Five individuals conducted the investigation and decided how to discipline Herrera. The members of the panel were Steven Hengen, the assistant superintendent of schools who oversaw the investigation, Dr. Peter Wharton, the superintendent of schools, Michael Hickey, RCSD's counsel, and two supervisors from Herrera's office.

After its investigation, the panel issued a "conference review" in April 2003 outlining its response. It described the harassing conduct of which Herrera had been accused as follows:

> (1) two requests by Mr. Herrera that a female employee look at pornographic images of male and female sex on Mr. Herrera's computer; (2) numerous instances where Mr. Herrera would rub or massage the neck of female co-workers without their prior permission; (3) instances where Mr. Herrera would stroke the hair of co-workers without their permission; (4) instances where Mr. Herrera would make remarks about the physical anatomy of female co-workers (i.e., "nice butt") or ask to feel a co-worker's butt; (5) instances where Mr. Herrera would attempt to look down the shirts of female co-workers[;] (6) instances where Mr. Herrera would persistently inquire about whether or not a female co-worker was wearing thong underwear and if so what color was it and did it match her bra; (7) instances where Mr. Herrera would look females up and down which made females feel uncomfortable; (8) an instance when Mr. Herrera made a remark to a female co-worker wherein he stated that she smelled good and that he needed to find some lotion and go into the bathroom; and instances when he made comments about oral sex and sexual positions which could be used between the female and her husband, and (9) an instance where Mr. Herrera attempted to reach in a woman's shirt to grab her identification badge.

(Engel App. 67).

The panel reported that the complaints against Herrera had been "carefully reviewed and verified," that the complaints were "credible," and that Herrera's contrary explanation was "not believable." (*Id*. at 68). The conference review stated that Herrera's conduct was unacceptable, and that it violated state and federal law. RCSD determined that Herrera would not be paid for the time that he was suspended.

Herrera was allowed to return to work on April 15, 2003, in the same department and location, but RCSD directed that he "undergo counseling to address

these areas of concern." (*Id*.). RCSD no longer permitted Herrera to have a master key to buildings, and he was required to gain advance approval for any travel away from the building where he worked. RCSD directed Herrera that when within his control, he was not to be alone with any female employee.

RCSD advised Herrera that "any future complaints of harassment by you will result in your immediate termination of employment," and that "[i]f there are any additional instances of inappropriate conduct[,] whether it be touching, verbal or otherwise[,] your employment will be terminated." (*Id*.). The conference review concluded with a further warning: "Continued conduct of the type mentioned above will not be tolerated any further. As stated above, if there is an additional complaint, your employment with the District will be terminated." (*Id*.)

Engel testified that after Herrera returned to work, she was afraid to venture away from her immediate work area, for fear of encountering Herrera. According to Engel, she "felt like [she] was a prisoner in [her] own room." (*Id*. at 48). She asked RCSD officials why Herrera could not be moved to a different department or to a different area, but said that she "never could get answers." (*Id*.). School officials later explained that there were limited options for transferring someone in Herrera's occupation, and that although moving Herrera had been discussed, RCSD concluded that it was best to leave him in the same location, because he would be under direct supervision. (*Id*. at 58).

After his return, Herrera once said hello to Engel in the hallway and tried to strike up a conversation. On another occasion, he spoke to her over the school's intercom system. Engel testified that when she was in the same room with Herrera, he continued to look her "up and down," such that she felt he was "undressing [her] with his eyes." (*Id.* at 40). Engel testified that she reported Herrera's continued leering to Hengen in May or June 2003. (*Id*. at 41). In August 2003, Hengen again suspended Herrera from work. At that time, Hengen wrote to Herrera that "on two

separate occasions you have violated previously-established written restrictions placed upon you (because of your previous sexual and nonsexual harassment) by speaking to Dede Engel in the hallway . . . and over the intercom." (*Id*. at 69).

Despite RCSD's earlier threat to terminate Herrera if he engaged in any inappropriate conduct, RCSD did not fire him. Instead, RCSD denied Herrera pay for the time he was suspended, and some of the previous restrictions on his activities were reimposed. The August 2003 letter from Hengen also included an admonition that "[w]ithout prior approval, you are not to initiate discussion with, apologize to, or otherwise contact Dede Engel or Jamie Volk." (*Id.*). Hengen removed the threat that Herrera definitely would be fired if he engaged in additional misconduct. This second disciplinary letter advised Herrera that "[a]ny future complaints of conduct of harassment or violation of the aforementioned terms and conditions will result in additional administrative action, up to and including the termination of your employment." (*Id.*).

According to Engel, after Herrera returned to work after this second suspension, he continued to give her "the look, the glance, the once over." (*Id*. at 39-40). Engel averred that this leering made the work environment stressful, to the point where she "would come home crying from work every night due to stress." (*Id.* at 44). Engel eventually resigned her position with RCSD in March 2004. At a farewell party at the school district, the superintendent asked Engel whether her departure had anything to do with Herrera's sexual harassment. Engel told him that the harassment was one of the factors that led her to resign, later explaining that she "couldn't take the stress anymore from the working conditions." (*Id*. at 38). Engel submitted a formal letter of resignation in which she wrote that she "really enjoyed" working at RCSD, and made no mention Herrera's sexual harassment. She later testified that she omitted reference to the harassment because the town was "too small," she would be "labeled," and she was a "single parent" who "need[ed] a job." (*Id*. at 39).

Engel filed suit against RCSD, alleging sex discrimination and constructive discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and discrimination under S.D. Codified Laws § 20-13-10. During discovery, Engel sought to depose attorney Hickey, who had been a member of the panel that investigated Herrera's behavior, and who also served as RCSD's counsel in its defense to Engel's suit. RCSD moved to quash a notice of deposition for Hickey, and the district court granted the motion. The court later granted RCSD summary judgment, holding that Engel had failed to present sufficient evidence that RCSD's response to Herrera's actions had been inadequate or that she had been constructively discharged. The court also dismissed Engel's parallel state discrimination claim with prejudice, and dismissed the other state claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## II.

We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to Engel. *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 845 (8th Cir. 2006). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## A.

This case involves sexual harassment by a co-worker who is not alleged to be a supervisor of the victim. In that situation, the employer cannot be vicariously liable for the co-worker's harassment. *Cf. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998). An employer may be *directly* liable for a co-worker's harassment, however, if the employer knew or should have known of the conduct, and failed to take proper remedial action. *E.g.*, *Merritt v. Albemarle Corp.*, No. 06-2952, 2007 WL 2229862,

at * 3 (8th Cir. Aug. 6, 2007); *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 987 (8th Cir. 1999).

Our court, like several other circuits, has adopted the EEOC's regulatory rule that "[w]ith respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer . . . knows or should have known of the conduct, unless it can show that it took immediate action and appropriate corrective action." 29 C.F.R. § 1604.11(d); *see Faragher*, 524 U.S. at 799-800; *Burns v. McGregor Electronic Indus., Inc.*, 989 F.2d 959, 966 (8th Cir. 1993); *Barrett v. Omaha Nat'l Bank*, 726 F.2d 424, 427 (8th Cir. 1984). Under this negligence standard, an employer is not liable if it takes prompt remedial action that is reasonably calculated to stop the harassment. *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999). The prevailing case law provides, however, that if the employer fails to take proper remedial action, then it may be culpable for harassment to which it did not adequately respond, on the theory that "the combined knowledge and inaction may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy." *Faragher*, 524 U.S. at 789; *see Smith v. St. Louis Univ.*, 109 F.3d 1261, 1265 (8th Cir. 1997); *Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1015-16 (8th Cir. 1988).

The district court granted summary judgment for RCSD because it concluded that Herrera's harassment stopped after RCSD took remedial action, *see Moore v. City of Philadelphia*, 461 F.3d 331, 350 (3d Cir. 2006); *Duncan v. Manager, Dept. of Safety, Denver*, 397 F.3d 1300, 1310 (10th Cir. 2005); *but see Fuller v. City of Oakland*, 47 F.3d 1522, 1529 (9th Cir. 1995), and because Engel failed to report any subsequent harassment. Taking the evidence in the light most favorable to Engel, we conclude that neither ground can sustain the grant of summary judgment.

Engel provided sufficient evidence to create a genuine issue of material fact as to whether Herrera's sexual harassment continued after RCSD took remedial action. A hostile work environment is a cumulative phenomenon, composed of "a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). While a single harassing act might not be actionable standing alone, it can be actionable as a constituent element of a larger hostile environment claim. *Id.* at 115. Thus, once a hostile work environment is created, the continuation of acts contributing to that hostile environment, or closely related acts, can support a finding that the hostile environment has continued. *See id.* at 118 ("The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability."); *Duncan*, 397 F.3d at 1309 ("The entire range of related acts constitutes the hostile work environment underlying [the plaintiff's] claim."). To show that a hostile work environment has continued after an employer's remedial action, a plaintiff need not prove an entire accumulation of harassing acts, amounting to a new and free-standing hostile work environment.

RCSD admitted that Herrera's pattern of harassment prior to April 2003 constituted a violation of federal and state law, and it identified "instances where Mr. Herrera would look females up and down which made females feel uncomfortable" as a constituent element of the hostile work environment. (Engel App. 67). Engel testified that Herrera continued this conduct after RCSD's remedial actions. (*Id.* at 39-41). Herrera also spoke twice with Engel after RCSD's initial remedial efforts, and RCSD acknowledged that these communications violated the written restrictions placed upon Herrera, which forbade "additional instances of inappropriate conduct." (*Id.* at 68-69). This evidence is sufficient to create a genuine issue of fact as to whether Herrera's harassment and the hostile work environment continued after RCSD took remedial action in April 2003.

Nor do we believe that summary judgment was warranted on the basis that Engel failed to report Herrera's continuing harassment to RCSD. "[T]he employer's knowledge of the misconduct is what is critical, not how the employer came to have that knowledge." *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 952 (7th Cir. 2005). Thus, a plaintiff is not necessarily required to report the harassment through an official complaint procedure. *Varner v. Nat'l Super Markets, Inc.*, 94 F.3d 1209, 1213 (8th Cir. 1996). Taken in the light most favorable to the plaintiff, the evidence shows that Engel officially complained of Herrera's harassment before RCSD's first remedial action, and later alerted Assistant Superintendent Hengen that Herrera continued certain elements of the harassment after the first remedial action. This evidence is sufficient to create a genuine issue of material fact as to whether Engel adequately placed RCSD on notice of continued harassment.

That Herrera's harassment continued, and that Engel reported the harassment, is not sufficient, in and of itself, to establish that RCSD could be liable for the hostile work environment. Proper remedial action need be only "reasonably calculated to stop the harassment," *Carter*, 173 F.3d at 702, and remedial action that does not end the harassment can still be adequate if it is reasonably calculated to do so. *Moore*, 461 F.3d at 350.

We conclude that there is insufficient evidence to show that RCSD is liable for the hostile work environment that occurred prior to April 2003. During this period, RCSD had a written policy against sexual harassment and a formal complaint procedure, yet no employee reported Herrera's harassment to supervisory employees until March 2, 2003. Herrera was suspended from work on March 6, 2003. The first remedial action, set forth in the conference review dated April 3, 2003, sanctioned Herrera with an unpaid suspension, restricted his ability to gain access to buildings, assigned him to undergo counseling, and issued a stern warning that additional harassment or inappropriate conduct would result in termination. Although it turns out that this action did not stop Herrera's harassment entirely, it did eliminate some

of the offending conduct, and the law does not require an employer to fire a sexual harasser in the first instance to demonstrate an adequate remedial response. *Barrett*, 726 F.2d at 427. The response was prompt, reasonably comprehensive in scope, and stern in its warnings. We therefore conclude as a matter of law that RCSD cannot be liable for a hostile work environment that existed prior to Herrera's return to work on April 15, 2003.

That an employer responds adequately to an initial report of sexual harassment, however, does not discharge the employer's responsibility to respond properly to subsequent reports of offending conduct by the harasser. In this case, as we have recounted, there is a genuine issue of fact as to whether Herrera's harassment continued after the first remedial action in April 2003. As to the time period between April 2003 and March 2004, we conclude that there is also a genuine issue of fact as to whether RCSD was negligent in responding to Herrera's continued harassment, such that it may be liable for a hostile work environment continuing to occur after the first remedial action, and for damages limited to that later period.

Several considerations lead to this conclusion. A reasonable jury could conclude that RCSD's second remedial action in August 2003 failed to address one element of Herrera's ongoing harassment. RCSD did not reprimand Herrera for his continued leering at Engel, even though she testified that he continued "undressing [her] with his eyes," and that she reported this conduct to the assistant superintendent in May or June 2003. The second remedial action, moreover, did not stop this aspect of the harassment. Engel testified that after August 2003, Herrera continued to give her "the look, the glance, the once over," just as he had done during the initial period of harassment. *See Carter*, 173 F.3d at 702 (one factor in assessing reasonableness of response is "whether or not the measures ended the harassment"). There is a gap in the record with respect to Engel's allegation of continued leering. The record does not show whether RCSD disputes that Engel reported the leering or that it occurred, or whether RCSD confronted Herrera about reports of continued leering. The record

reflects that RCSD officials sent Herrera a disciplinary letter in August 2003 after a meeting, but the letter does not mention leering, and the record does not disclose details about the meeting that preceded the issuance of the letter. In any event, on the record before us, taken in the light most favorable to the plaintiff, Engel complained that Herrera continued to leer at her after the first remedial action, and RCSD failed to respond.

Significantly in our view, RCSD's decision to respond to Herrera's continued harassment by decreasing, rather than increasing, its threatened sanctions may reasonably be viewed as contributing to a negligent response. The reasonableness of an employer's response to repeated sexual harassment "may well depend upon whether the employer progressively stiffens its discipline, or vainly hopes that no response, or the same response as before will be effective." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 676 (10th Cir. 1998); *accord Curry v. District of Columbia*, 195 F.3d 654, 662 n.17 (D.C. Cir. 1999); *Intlekofer v. Turnage*, 973 F.2d 773, 779 (9th Cir. 1992) (opinion of Hall, J.) (concluding that case was submissible where employer "failed to take more severe disciplinary measures against [harasser] once it learned that [the] harassing behavior had not stopped"); *id*. at 783 (Keep, J., concurring in judgment); *Smith v. Auburn Univ.*, 201 F. Supp. 2d 1216, 1226 (M.D. Ala. 2002) (genuine issue of fact as to whether remedial action was appropriate where, among other things, harassment continued and "the threat of termination proved to ring hollow"). Here, RCSD had threatened to terminate Herrera if any additional substantiated complaints of harassment were made against him, but taking Engel's complaints as true for purposes of summary judgment, RCSD did not follow through on this promise. Instead, RCSD responded to Engel's additional complaints by suspending him and then advising that further inappropriate conduct could lead to administrative action, "up to and including the termination of [his] employment" – thus opening the possibility that even a third round of harassment would not cost Herrera his job. Engel reasonably contends that this backtracking may have emboldened Herrera, and thereby contributed to his continued harassment of her.

-11-

The second remedial action also omitted any requirement that Herrera undergo counseling, an element that was included as part of the first remedial action. Pursuant to the conference review in April 2003, RCSD assigned an elementary school counselor to meet with Herrera. The counselor testified, however, that he was inexperienced in working with perpetrators of sexual harassment, and that he believed his job was to help with Herrera's emotional state. (Engel App. 70-71, 73). Particularly given evidence that the initial round of counseling was ineffectual, a reasonable factfinder may well conclude that a reasonable response to Herrera's continued activity should have included more direct and intensive intervention. Nor did RCSD's second remedial action take any steps to transfer Herrera to a different building, or to an area further removed from Engel in the present building, in light of Herrera's continuing inappropriate conduct and Engel's questions about moving him. A reasonable jury may consider the employer's failure to implement such an option as a factor suggesting unreasonableness. *Hathaway v. Runyon*, 132 F.3d 1214, 1224 (8th Cir. 1998).

In sum, Engel has presented evidence that could support a reasonable finding that some elements of RCSD's second remedial action were insufficient to address Herrera's ongoing harassment, that the remedial action did not stop the harassment, and that the second remedial action may actually have encouraged Herrera to feel that he could safely continue certain activities. It may be argued in reply that RCSD's initial disciplinary statement was more severe than the law required, and that the backsliding by RCSD in the second remedial action resulted in a sanction that was reasonably proportional to Herrera's offending conduct. For the reasons stated, a reasonable factfinder could find shortcomings in RCSD's second response that go beyond its failure to follow through on the warnings of the first disciplinary letter. Our analysis of Engel's claim, moreover, must focus on the adequacy of the response that RCSD actually pursued – including the potentially negative repercussions of retreating from its promise of tough sanctions for repeated inappropriate conduct – not on whether some other hypothetical response would have been reasonable. Under all of

the circumstances here, we believe the adequacy of RCSD's second remedial action, and its potential liability for a continuing hostile work environment after April 2003, presents a genuine issue for decision by a factfinder. We therefore conclude that the district court's grant of summary judgment for RCSD on Engel's hostile work environment claims under Title VII and S.D. Codified Laws § 20-13-10 should be reversed in relevant part.

B.

Engel next appeals the district court's dismissal of her constructive discharge claim. "Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit." *Tatum v. Ark. Dep't of Health*, 411 F.3d 955, 960 (8th Cir. 2005) (internal quotation omitted). We also have held that constructive discharge may occur where an employer commits intentional acts of sexual harassment, and the victim's resignation is a reasonably foreseeable consequence of these intentional acts, even if the plaintiff cannot prove that the employer specifically intended to force a resignation. *Gartman v. Gencorp Inc.*, 120 F.3d 127, 130 (8th Cir. 1997).

We have never held, however, that negligence by an employer is sufficient to prove liability for constructive discharge. To the contrary, we believe a plaintiff must show deliberate action on the part of the employer – either deliberate sexual harassment or a deliberate effort to force resignation – to establish a constructive discharge. *See Whidbee v. Garzarelli Food Specialities, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000); *Kline v. N. Texas State Univ.*, 782 F.2d 1229, 1234 (5th Cir. 1986). Engel has not presented evidence that RCSD acted deliberately in either sense. Her claims are premised on allegations of negligence. Accordingly, the district court correctly dismissed the constructive discharge claims under Title VII.

C.

Engel also argues that the district court erred by quashing her notice of deposition of Michael Hickey, RCSD's counsel. The district court evaluated Engel's notice under *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). *Shelton* provides that a district court should permit a deposition of opposing counsel only when "the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information sought is crucial to the preparation of the case." 805 F.2d at 1327. The district court concluded that Engel had not even attempted to meet these requirements, and thus granted RCSD's motion to quash.

On appeal, Engel argues that *Shelton* does not apply to this situation, because she seeks to depose Hickey in connection with his work on the investigation of Herrera's harassment. She cites our decision in *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002), which held that the *Shelton* test does not apply to discovery of certain information known only by an attorney regarding a "prior concluded case." *Id.* at 730. Engel contends that the investigation of Herrera is comparable to a "prior concluded case" as discussed in *Pamida*. This argument was not raised in the district court, and we therefore decline to consider it. *Hartman v. Workman*, 476 F.3d 633, 635 (8th Cir. 2007). As the matter was presented to the district court, we conclude that the court's ruling was not an abuse of discretion, and we see no injustice in declining to permit Engel to advance a new theory on appeal.

\*       \*       \*

For the foregoing reasons, we affirm in part, but reverse in part the district court's dismissal of Engel's hostile work environment claims. Because the district court dismissed without prejudice certain state-law claims pursuant to 28 U.S.C.

§ 1367(c)(3), we reinstate those claims as well.  The case is remanded for further proceedings consistent with this opinion.

_____