SMITH, Circuit Judge,
dissenting.
I respectfully dissent. After reviewing the record in the light most favorable to Nichols, I conclude that Nichols has not demonstrated that TNI acted negligently in addressing her complaints. When an employee alleges sexual harassment by a coworker, “[a]n employer must be allowed some time to gauge the credibility of the complainant.” Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 988 (8th Cir.1999). As a result, an employee often must “tolerate some delay” by an employer taking appropriate remedial action. See id.
Sexual harassment by a coworker is not a violation of Title VII unless an “employer knew or should have known of the harassment in question and failed to take proper remedial action.” Moylan v. Maries Cty., 792 F.2d 746, 750 (8th Cir.1986) (citing Henson v. City of Dundee, 682 F.2d 897, 905 (11th Cir.1982)). Consistent with the negligence standard used to evaluate an employer’s response, we have refrained from requiring specific remedial measures. Instead, we have stated that “[fjactors in assessing the reasonableness of remedial measures may include the amount of time that elapsed between the notice and remedial action, the options available to the employer, ... and whether or not the measures ended the harassment.” Carter v. Chrysler Corp., 173 F.3d 693, 702 (8th Cir.1999) (emphasis added) (citations omitted). “Proper remedial action need be *989 only ‘reasonably calculated to stop the harassment’.... ” Engel v. Rapid City Sch. Dist., 506 F.3d 1118, 1125 (8th Cir.2007) (quoting Carter, 173 F.3d at 702).
The majority concludes that the district court erred in finding that Nichols did not report Paris’s conduct to TNI until June 1. Under the majority’s factual reconstruction, Nichols’s initial report to TNI regarding Paris “must have been on Friday, May 25.”[1] The record may not support the district court’s June 1 finding, but it also does not support the majority’s May 25 finding. The majority states that Nichols alleges she “immediately” called Foust to report Paris’s conduct after the first exposure. Nowhere in the record does Nichols make such a definitive statement. Rather, the record reflects only that Nichols called Foust to report Paris’s conduct sometime after Paris first exposed himself to Nichols. Moreover, when the record is read to favorably harmonize Nichols’s testimony, May 28 is the earliest Nichols could have called Foust to report Paris.
In her deposition, Nichols was asked when she “first called Melissa [Foust] after [Paris] exposed himself.” In her answer, Nichols discussed two incidents in which Paris had exposed himself. According to Nichols:
[The] [fjirst time he did it, he — I was driving days; he drove nights. And he was back in his bunk and the drapes— the curtains were pulled. First time he did it, he just threw the curtains open, standing there naked, exposing himself to me. And of course — and I was driving down the road at the time. And of course that upset me and I told him to get himself dressed and to not behave that way.
Then the next time, what he did — he did this several times — but he was come up there right beside me, reaching into the shelf above the windshield, acting like he was getting something out of there. And he didn’t have boxer shorts on. I never told anyone he had boxers on. He had the regular kind of underwear men wear.
But the legs were tremendously big on him. They completely gapped open. And when he stood right beside me, he was completely exposed to me where I could smell him. I could have reached over and bit it off. And I asked him to stop doing it.
Nichols then stated that she first called Foust “[t]hat time that he did it, he got up so close to my face, exposing himself, and I smelled him.” Later, when asked if she called Foust “after that incident where [Paris] opened up the curtain and exposed himself,” Nichols responded, ‘Tes. That’s — I think that was the first time I called her.” Construing these two answers in the light most favorable to Nichols, both are true only if the call to Foust occurred not only after Paris opened up the curtain and exposed himself but also after the time Paris got up close to Nichols’s face and exposed himself.
Given that Nichols testified that Paris did not expose himself to her more than once in a day, the time Paris “got up so close to [Nichols’s] face, exposing himself, and [she] smelled him” could not have occurred on May 25, the first day of the May 25-June 1 period with Paris. Foust did not work on May 26 or -27. Thus, May 28 is the earliest Nichols could have made her first call to Foust to report the exposures.
*990 The majority’s May 25 finding is unsupported by the record. As such, TNI’s opportunity to take appropriate remedial action is significantly reduced. No specific time requirement exists for employers to respond to sexual harassment claims, but it must be reasonable under the circumstances. Carter, 173 F.8d at 702 (setting forth factors to assess the reasonableness of remedial measures, one of which is “the amount of time that elapsed between the notice and remedial action”). Applying existing circuit precedent, TNI took remedial action within a reasonable time of receiving notice from Nichols. In Barrett v. Omaha National Bank, we found an employer’s response to an employee’s sexual harassment complaint within four days to be prompt remedial action. 726 F.2d 424, 427 (8th Cir.1984). Likewise, in Green v. Franklin National Bank of Minneapolis, we rejected an employee’s claim that an employer failed to act promptly enough when it took remedial action nearly a month after learning of the harassment. 459 F.3d 903, 912 (8th Cir.2006) (rejecting the cases that the employee cited to support her claim because they “involvezd situations where the employer waited much longer than one month to [take proper remedial action]”).
Finally, in Dhyne, we considered it a “close question” whether an employer acted promptly enough when it delayed two months before taking remedial action. 184 F.3d at 987-88. The majority is correct that in CRST we determined that the employer took appropriate remedial action by removing the harassed employee from the truck within 24 hours; however, we did not set 24 hours as a minimum standard. E.E.O.C. v. CRST Van Expedited, Inc., 679 F.3d 657, 693 (8th Cir.2012) (finding that the employer removed the employees “from the truck as soon as practicable”). An employer’s response need not be ideal in every case but must be reasonable under the circumstances. See, e.g., Green, 459 F.3d at 912 (finding that although employer’s actions were less than ideal, they were sufficient); Lapka v. Chertoff, 517 F.3d 974, 987 (7th Cir.2008) (concluding that an employer’s “response may not have been perfect in all respects, but it was adequate”).
Here, Paris’s alleged harassment of Nichols ended not later than June 1. To be sure, no one should have to endure harassing conduct for any period, but employers can only be legally responsible for conduct of which they are made aware and fail to take timely, reasonable steps to correct. The time period between May 28 and June 1 is the very type of delay employees must unfortunately sometimes endure. Considering current precedent, where a two-month delay presented a “close question,” I submit that the four-day delay here was not unreasonable.
This case also presents important contextual considerations in determining whether TNI acted negligently. First, the harassment at issue occurred in a truck that was scheduled to be on the road from May 25-June 1. Unlike the typical workplace context of an office, TNI could not immediately investigate. While TNI could have possibly removed Nichols immediately from Paris’s truck, Nichols told TNI that she did not want to get off the truck until another codriver was found. Significantly, TNI’s failure to remove Nichols from the truck was the only concrete criticism Nichols’s expert had of TNI’s response. The majority is correct that TNI could have reprimanded Paris. However, TNI’s decision not to reprimand Paris immediately does not constitute actionable conduct. In choosing not to reprimand Paris before determining fault, TNI did not delay unreasonably in taking remedial action. See Dhyne, 184 F.3d at 988 (holding that an employer must be allowed *991 some time to gauge the credibility of the complainant).
Contrary to the majority’s characterization, I do not think TNI knew or should have known that Nichols needed to be saved. At most, TNI knew Paris was exposing himself to Nichols but that Nichols did not consider the conduct so intolerable that she required immediate removal from the truck. As already mentioned, Nichols told'TNI she wished to remain on the truck with Paris until a different driver could be located. Additionally, prior to going to Paris’s residence for a mandatory 34-hour rest period, Paris and Nichols stopped at a TNI terminal in Laredo, Texas. Nichols did not take the opportunity to get off the truck; instead, she continued on with Paris to his residence. Certainly, an employee is not required to “quit or want to quit.” Davis v. U.S.P.S., 142 F.3d 1334, 1341 (10th Cir.1998). However, Nichols would not have been quitting her job by getting off the truck in Laredo before accompanying Paris to his residence during the rest period. TNI was not negligent in construing Nichols’s words and conduct as inconsistent with an employee requiring emergency action.
Finally, the harassment ended when TNI signed off on Nichols’s request to team drive with Chris Loya rather than Paris. Even when employers do not act in an ideal manner, remedial action that effectively ends harassment can be deemed sufficient. See Green, 459 F.3d at 912. Accordingly, I would affirm the judgment of the district court.

. Notably, nowhere does Nichols herself claim she reported Paris’s conduct on May 25.